THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* RICHARD T. PIPER, Defendant-Appellee.

Second District    No. 80-902

Opinion filed October 30, 1981.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Robert L. Thompson and Barbara A. Preiner, Assistant State's Attorneys, of counsel), for the People.

Edwin T. Simpson, of Wheaton, for appellee.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

The question raised by this appeal is whether opening the door of a vehicle by police to examine the vehicle identification number on the door post in the course of a routine accident investigation without asking permission of the driver constitutes an illegal search.

Defendant was charged by complaint in the Circuit Court of Du Page County with three offenses arising from the discovery by police of weapons in his truck during the course of a routine traffic accident investigation: (1) unlawful use of weapons in that he knowingly carried a loaded firearm in his vehicle (Ill. Rev. Stat. 1979, ch. 38, par. 24—1(a)(10)); (2) unlawful use of weapons in that he knowingly possessed a bludgeon (Ill. Rev. Stat. 1979, ch. 38, par. 24—1(a)(1)); and (3) possession of a firearm without the requisite firearm owners identification card (Ill. Rev. Stat. 1979, ch. 38, par. 83—2). After a hearing, defendant's motion to suppress the weapons evidence as the product of an illegal search was granted by the trial court. The State appeals. Defendant filed an appearance in this court, but did not submit a brief.

Defendant Piper was involved in a traffic accident at the intersection of Gary Mill Road and Roosevelt Road in West Chicago. Defendant hailed a passing squad car which stopped to investigate the accident. Both of the vehicles involved in the accident were apparently parked at the side of the road, and the squad car pulled up behind the second vehicle.

Two deputy sheriffs, Prunty and Horan, were in their squad car. Defendant, his wife and the driver of the second vehicle were summoned to the squad car where they answered routine questions addressed to them by Deputy Prunty concerning the accident. During this time, Deputy Horan was outside the police car recording the license plate numbers, the make and model of the vehicles and the vehicle identification numbers (VIN) of the vehicles involved in the accident.

Approaching defendant's truck, Deputy Horan looked through the windshield in an effort to find the VIN on the dashboard. Unable to locate the number, and without asking defendant, he proceeded to open the door and found the VIN on the door post. As Officer Horan copied the VIN he observed a revolver in a holster draped over the side and secured to the back of the seat which was not visible from outside the truck. After unloading the weapon, Horan looked under the front seat and located a knife, and several clubs.

At a preliminary hearing, Piper moved to suppress the weapons seized as a result of Deputy Horan's search of his vehicle. The trial court granted the motion finding that defendant had a right of privacy within

the cab of his vehicle; that the cab could be searched pursuant to a search warrant or if the driver of the vehicle is unable to produce any identification for the vehicle; and that because the deputy sheriff in this case did not request the information prior to searching the vehicle, his opening of the truck's door constituted an illegal search. The trial court granted defendant's motion to suppress and we affirm.

The State would justify the investigation which yielded the weapons on two alternative grounds: first, that opening the door of a vehicle in the course of a routine traffic accident to find the VIN is not a "search" within the protective scope of the fourth amendment to the United States Constitution; and second, if this be deemed a search, it is not constitutionally unreasonable.

■■ In *City of Decatur v. Kushmer* (1969), 43 Ill. 2d 334, 338, 253 N.E.2d 425, 428, our supreme court observed:

"A search implies a prying into hidden places for that which is concealed, and it is not a search to observe that which is open to view. A search implies an invasion and quest with some sort of force either actual or constructive. [Citations.]" Accord, *People v. Crowder* (1981), 99 Ill. App. 3d 500.

In *People v. Wolf* (1975), 60 Ill. 2d 230, 326 N.E.2d 766, the supreme court noted that the courts of some jurisdictions have held that examining a VIN by opening the car door or lifting the hood is not a search within the scope of fourth amendment protection where there is a legitimate reason for doing so. However, the court in *Wolf* stopped short of adopting this approach for Illinois.

The argument favoring this view was fully expounded in *United States v. Polk* (5th Cir. 1970), 433 F.2d 644, 647-48:

"The rationale * * * is that an automobile owner can have no reasonable expectation of privacy with respect to the car's VIN.
* * *

Vehicle identification numbers are put on automobiles by the manufacturers to aid in identifying the vehicles. There are so many similar cars that individual vehicles can be identified only through the use of such individual numbering. State laws contain many requirements for disclosing and recording such VIN's, showing a generally accepted mode of disclosure and the lack of any reasonable expectation of privacy with respect to the numbers.

Most states require that automobiles be registered with a state agency to establish a record of car ownership. The registration, which must be carried in the car, identifies the car by its VIN. These requirements proceed from a purpose to keep track of the ownership of potential instruments of personal and property

injury, so that drivers in automobile accidents can be traced and so that compulsory insurance requirements can be enforced. * * * License plates are not sufficient for these purposes because of their easy removability.

It is routine practice for policemen stopping cars in traffic control operations to ask for the automobile registration papers in addition to the driver's license. Viewing registration papers is part of the accepted regulatory scheme.

VIN's are typically disclosed to private parties also. Automobile purchase and sale documents usually identify the car by its VIN. Automobile insurance policies also identify cars by their VIN's. There can therefore be no reasonable expectation of privacy with respect to the identity of the VIN. Opening the car door, looking under the hood, or crawling under the car to inspect the rear axle does not independently bring an inspection of the VIN within the scope of the Fourth Amendment.

* * *

Thus the VIN on the rear axle or on the car frame are outside any reasonable expectations of privacy. Those that may be seen only by opening the car door or hood are no more private: doors and hoods are continually opened to the eyes of observers. Although opening the door of a car may involve a technical trespass, such action does not invade any expectations of privacy."

This view, however, has been criticized. (See generally 1 W. LaFave, Search and Seizure §2.5 (1978).) LaFave argues persuasively that the adoption of such a rule would mean that police would be free to enter "any particular car on a whim and that they could make wholesale entries of cars on nothing more than a hope that one of them might turn out to be stolen." While it is true that the United States Supreme Court has held that one has a "lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects" (*Cardwell v. Lewis* (1974), 417 U.S. 583, 590, 41 L. Ed. 2d 325, 335, 94 S. Ct. 2464, 2469), the court was careful to add that "[t]his is not to say that no part of the interior of an automobile has Fourth Amendment protection; the exercise of a desire to be mobile does not, of course, waive one's right to be free of unreasonable government intrusion." 417 U.S. 583, 591, 41 L. Ed. 2d 325, 335, 94 S. Ct. 2464, 2470. ■■ However, emphasis upon the quasi-public nature of identification numbers like the VIN may be somewhat misplaced. In *United States v. Johnson* (5th Cir. 1970), 431 F.2d 441, 447, Judge Godbold, writing in dissent, observed:

"An argument can be constructed that there is a difference

where the police invasion is to seek identification numbers. *I.e.*, because identification numbers, secret and otherwise, are for identification purposes the citizen can have no reasonable expectation of their remaining private—they are for identification, *ergo*, the citizen must expect them to be available to the police for the purpose for which intended. But the function of being an identification device does not exempt the device itself, or the instrumentality it identifies, from the Fourth Amendment. In our increasingly complex world our motor vehicles are not the only things numbered for identification. So are such tangible effects as household appliances, lawn mowers, outboard motors, and even the watches on our wrists. Add to the list such papers and documents kept in home, safe deposit box or on the person, as bank checks, drivers' licenses, social security cards, credit cards, insurance policies, securities, and deeds and mortgages, and the automobile registration papers often carried in the glove compartment of the car. All of these items have primary or secondary qualities of identification, but this does not subject them, when not in plain view, to being sought out by police action beyond the reach of the Fourth Amendment."

In other words, the analysis of whether a police investigation should be deemed a search and therefore subject to fourth amendment restraints must weigh the reasonableness of one's privacy interest in the instrumentality, and the particular area of the instrumentality upon which the VIN is inscribed, and not just the reasonableness of the privacy interest in the number itself. Thus, while the examination of a VIN, inscribed on the dashboard of a car which is in plain view of a policeman (or anyone else) looking through the windshield from outside would not be a fourth amendment search because it is not a "prying into hidden places for that which is concealed" (*Kushmer*, 43 Ill. 2d 334, 338), by the same standard the examination of a VIN which can be observed only when a policeman has opened the door may well constitute a search of that portion of the vehicle otherwise concealed from public view. Although one's expectation of privacy in the number may be no different, it is surely a matter of common sense that one's expectation of privacy in that which can be seen from outside the car is significantly different from that which can be seen only when the door has been opened. Otherwise, why bother to put things in the glove compartment, under the seat, or, as here, behind the seat and out of the view of passers-by?

■■ We therefore reject the State's contention that one can have no reasonable expectation of privacy in a VIN, regardless of its location on, or in, the vehicle, or the circumstances of the police investigation. Where,

as here, the VIN can be seen by the policeman only when he himself has opened the door to the vehicle, a search has begun.

Viewing this as a search, the inquiry then shifts to whether the circumstances here fall within one of the exceptions of the warrant requirement. In *Katz v. United States* (1967), 389 U.S. 347, 357, 19 L. Ed. 2d 576, 585, 88 S. Ct. 507, 514, the Supreme Court held that warrantless searches are "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." As the State points out, among these exceptions is the so-called "automobile exception" which arose because of the exigency which confronted police in connection with searching vehicles where "the opportunity to search is fleeting since a car is readily movable." (*Chambers v. Maroney* (1970), 399 U.S. 42, 51, 26 L. Ed. 2d 419, 428, 90 S. Ct. 1975, 1981.) In *Cardwell v. Lewis*, 417 U.S. 583, 590, 41 L. Ed. 2d 325, 335, 94 S. Ct. 2464, 2469, the court noted that such "fleeting" opportunity to search, and therefore the need for a less stringent warrant requirement, is "strikingly true where the automobile's owner is alerted to police intentions and, as a consequence, the motivation to remove evidence from official grasp is heightened."

■■ However, there are limitations upon this exception. In *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 461, 29 L. Ed. 2d 564, 580, 91 S. Ct. 2022, 2035, the Supreme Court observed: "The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." *Coolidge* struck down a warrantless automobile search as outside the ambit of the "automobile exception" because there were no exigent circumstances which would have relieved the police of the necessity to secure a warrant. The court stated:

> "[T]here is nothing in this case to invoke the meaning and purpose of the rule of *Carroll v. United States* [the font of the 'automobile exception']—no alerted criminal bent on flight, no fleeting opportunity on an open highway after a hazardous chase, no contraband or stolen goods or weapons, no confederates waiting to move the evidence, not even the inconvenience of a special police detail to guard the immobilized automobile. In short, by no possible stretch of the legal imagination can this be made into a case where 'it is not practicable to secure a warrant,' *Carroll* [*v. United States* (1925), 267 U.S. 132, 153, 69 L. Ed. 543, 551, 45 S. Ct. 280, 285], and the 'automobile exception,' despite its label, is simply irrelevant." (403 U.S. 443, 462, 29 L. Ed. 2d 564, 580, 91 S. Ct. 2022, 2035.)

Clearly then, the warrantless search of a vehicle in the course of a routine accident investigation cannot be justified on the basis of the "automobile exception," for there is no exigency apart from the need to remove any injured passengers and damaged vehicles from the roadway. And these exigencies, if they are present (they were not in our case), are entirely

unrelated to the inspection of the interior of a vehicle solely for the purpose of finding its VIN.

■■ Rather, the justification, if any, for this type of search must be sought in those cases which define the permissible scope of State authority to regulate vehicle use. (See generally 3 W. LaFave, Search and Seizure §10.8 (1978).) These cases employ the balancing test set forth in *Camara v. Municipal Court* (1967), 387 U.S. 523, 18 L. Ed. 2d 930, 87 S. Ct. 1727, whereby the need of the State to search is weighed against the invasion of privacy which the particular search entails. Applying this test, the Supreme Court in the recent case of *Delaware v. Prouse* (1979), 440 U.S. 648, 59 L. Ed. 2d 660, 99 S. Ct. 1391, declared unconstitutional the practice of randomly stopping vehicles for the purpose of checking driver's licenses and vehicle registrations. Conceding that the State's interest in enforcing highway safety was important, the court nevertheless doubted:

> "° ° ° whether in the service of these important ends the discretionary spot check is a sufficiently productive mechanism to justify the intrusion upon Fourth Amendment interests which stops entail. ° ° ° Given the alternative mechanisms available ° ° ° we are unconvinced that the incremental contribution to highway safety of the random spot check justifies the practice under the Fourth Amendment." 440 U.S. 648, 659, 59 L. Ed. 2d 660, 671, 99 S. Ct. 1391, 1399.

In *Prouse*, the court was concerned with the unbridled discretion of the police in randomly selecting vehicles for license and registration checks. Yet its discussion of this problem (440 U.S. 648, 662, 59 L. Ed. 2d 660, 672-73, 99 S. Ct. 1391, 1400) is also apropos of the case at bar:

> "The 'grave danger' of abuse of discretion, *United States v. Martinez-Fuerte* [(1976), 428 U.S. 543, 559, 49 L. Ed. 2d 1116, 1129, 96 S. Ct. 3074, 3083] does not disappear simply because the automobile is subject to state regulation resulting in numerous instances of police-citizen contact. *Cady v. Dombrowski* [(1973), 413 U.S. 433, 441, 37 L. Ed. 2d 706, 715, 93 S. Ct. 2523, 2528.] Only last Term we pointed out that 'if the government intrudes ° ° ° the privacy interest suffers whether the government's motivation is to investigate violations of criminal laws or breaches of other statutory or regulatory standards.' *Marshall v. Barlow's Inc.* [(1978), 436 U.S. 307, 312-313, 56 L. Ed. 2d 305, 311, 98 S. Ct. 1816, 1821.] There are certain 'relatively unique circumstances' [436 U.S. 307, 313, 56 L. Ed. 2d 305, 311, 98 S. Ct. 1816, 1821,] in which consent to regulatory restrictions is presumptively concurrent with participation in the regulated enterprise. See *United States v. Biswell* (1972), 406 U.S. 311, 32 L. Ed. 2d 87, 92 S. Ct. 1593 (federal regulation of firearms); *Colonnade Catering Corp. v. United States* (1970), 397

U.S. 72, 25 L. Ed. 2d 60, 90 S. Ct. 774 (federal regulation of liquor). Otherwise, regulatory inspections unaccompanied by any quantum of individualized, articulable suspicion must be undertaken pursuant to previously specified 'neutral criteria.' *Marshall v. Barlow's Inc.* [(1978), 436 U.S. 307, 323, 56 L. Ed. 2d 305, 318, 98 S. Ct. 1816, 1826.]"

■■ In our case, the State has made no attempt to identify the "neutral criteria" which are to guide police in deciding whether to open the doors of vehicles in search of VIN. Instead, the State reiterates the purposes for VIN recited by the Illinois Supreme Court in *People v. Wolf* (1975), 60 Ill. 2d 230, 233, 326 N.E.2d 766, 768, "to permit transfers and other transactions involving motor vehicles and to protect this highly mobile type of property from theft or other misappropriation." Manifestly, these purposes have no bearing whatever upon routine traffic accidents where there is no suspicion of theft, nor any intention to transfer title.

In *Wolf*, police had stopped a car being driven with only one headlight in violation of the Illinois Motor Vehicle Code. Although examinations of the suspect's driver's license, license plates, and "passenger car identification card" checked out, the police officer became suspicious when he noticed that the plates were fastened to the car by wire. Seeking further identification of the vehicle, the officer opened the car door to examine the VIN inscribed on the door post, and in so doing detected the smell of marijuana. Affirming the denial of his motion to suppress, the supreme court, "[a]ssuming, *arguendo*, that the opening of a car door to examine the registration number does amount to a search," ruled that the search was not an unreasonable one under the circumstances. *People v. Wolf* (1975), 60 Ill. 2d 230, 232.

*Wolf* is distinguishable from our case. The suspect in *Wolf* was initially stopped for an offense for which he was subject to arrest (Ill. Rev. Stat. 1971, ch. 95½, par. 12—201(a)), a factor which the United States Supreme Court in *Prouse* noted would justify the police demand to see the driver's license and registration. Second, our supreme court in *Wolf* placed great weight upon the fact that the license plates had been wired in place, which provided an articulable basis for the police officer's suspicion that the car may have been stolen. Third, the driver's "car identification card" apparently did not reveal the vehicle's identification number. Finally, the court noted that VIN plate affixed to the car provided the "most authoritative identification of the vehicle," a significant factor where there are grounds to suspect that a car has been stolen.

The defendant in our case was not stopped for an offense; indeed, it was the defendant who hailed the police car to assist in investigating the accident. There was nothing in the behavior of the defendant, the nature of the accident or the appearance of his vehicle which aroused any

suspicion in Deputy Horan that the defendant had broken the law or was being other than fully cooperative with the investigation. There is no evidence that the deputy used his search for the VIN as a pretext to search for other contraband in the vehicle. Nor was there any reason for him to suspect that defendant would provide him with a false vehicle title or registration card upon which the VIN is printed had the deputy asked to see them. Ill. Rev. Stat. 1979, ch. 95½, par. 3—107(a)(5).

■■ In the absence of any articulable facts upon which the police might reasonably suspect that the car was stolen, there would not seem to be any sound policy interest which would justify the intrusion of opening a vehicle door to ascertain the VIN in these circumstances. It has been suggested elsewhere (*United States v. Polk*) that checking the VIN assists in tracing the whereabouts of drivers involved in traffic collisions so that compulsory insurance requirements can be enforced. However, in the absence of evidence to the contrary, there is no reason to believe that such information cannot reliably be obtained by less intrusive means such as recording the data from a driver's license, vehicle title or registration. The importance of a VIN for this purpose in any event may be questioned. Section 11—403 of the Illinois Vehicle Code, entitled, "Duty to give information and render aid," requires only that a driver involved in an accident provide the driver or passenger of the other vehicle his name, address, registration number and driver's license. (Ill. Rev. Stat. 1979, ch. 95½, par. 11—403.) By this statute, the legislature would appear to have acknowledged that this information would ordinarily be sufficient to trace the driver's whereabouts.

The order of the Circuit Court of Du Page County suppressing the evidence of this search is affirmed.

Affirmed.

VAN DEUSEN and NASH, JJ., concur.