THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTHONY ALEXANDER, Defendant-Appellant.

First District (6th Division)    No. 1—93—1970

Opinion filed February 24, 1995.—Rehearing denied May 26, 1995.

Law Office of Samuel J. Cahnman, of Chicago (Michael C. Just, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Michael Golden, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Defendant, Anthony Alexander, was charged with possession of stolen motor vehicle parts and possession of motor vehicle parts with removed or defaced vehicle identification numbers (VINs) (Ill. Rev. Stat. 1991, ch. 95$^1$/2, pars. 4—103(a)(1), (a)(4), respectively) in case number 92 CR 3535. (The latter charge was amended before trial to reflect that defendant knowingly removed and/or defaced the VINs on stolen motor vehicle parts.) In case number 92 CR 3536, defendant was charged with possession of a stolen motor vehicle part. (Ill. Rev. Stat. 1991, ch. 95$^1$/2, par. 4—103(a)(1).) After a bench trial, defendant was found guilty as charged in case number 92 CR 3535. A month later, defendant was tried on case number 92 CR 3536. At the close of the State's case in chief, the trial court granted defendant's motion for a directed finding. On the same date, defendant pleaded guilty to an unrelated stalking charge and was then sentenced to four years' imprisonment on the charges. (The conviction for stalking is not involved in this appeal.)

On appeal of his convictions under case number 92 CR 3535, defendant contends that the trial court erred in (1) denying his motion to quash his arrest and suppress evidence; (2) determining that he

lacked standing to challenge the police search of the garage in which the evidence used against him was seized; and (3) finding him guilty beyond a reasonable doubt. Defendant also contends that his trial counsel was ineffective. Finally, defendant contends that he was denied due process of law where three years elapsed between the issuance of the warrant for his arrest under case number 92 CR 3536 and the subsequent arrest.

The relevant facts are as follows. Defendant was arrested on January 28, 1992, at approximately 11 a.m., behind a house located at 11558 South Church Street in Chicago. The arrest was made by Chicago police detective Frederick Schulz and at least one other officer pursuant to an arrest warrant that had been issued in November 1988. After his arrest, defendant was indicted for possession of an engine, hood, windshield and tirewell cover taken from a 1988 Cadillac automobile which had been reported stolen and a transmission and windshield from another 1988 Cadillac reported stolen. Defendant was also indicted for knowingly removing VINs from parts taken from a third stolen 1988 Cadillac.

Prior to trial, defendant filed a motion to quash his arrest and suppress evidence seized by the police at the time of his arrest. Defendant contended that the police had no lawful authority to enter the garage at the South Church address, search for stolen parts, and seize such parts since he was not in the garage when he was arrested. Defendant also moved to suppress all statements he made to police after his arrest.

At the hearing on the motions, Douglas Jones, who lived a few houses away from 11558 South Church, testified for defendant that shortly before defendant's arrest, he asked defendant to look at his car because it was overheating. Jones parked his car in front of 11558 South Church, and defendant inspected it. Defendant told Jones he thought the car needed a thermostat but that he could not fix it because someone else had the key to the garage in the backyard, where he kept his tools. Defendant then went to the backyard to get water to put in Jones' car. When he looked in the backyard where defendant had gone, Jones observed police officers handcuffing defendant and two other men. Jones testified that the arrest took place in the yard, not in the garage. He did not see defendant or the other two men enter the garage at any time before, during, or after the arrest. Jones stated that defendant operated an auto parts business out of the garage.

Tyrone Wilson also testified for defendant that he lived next door to 11558 South Church and at the time of defendant's arrest was in his own backyard. Shortly before the arrest, Wilson saw defendant go

into the backyard at 11558 South Church to retrieve water from a hose. At that point, Wilson saw two policemen enter the backyard and handcuff defendant. Defendant was not in the garage when the officers arrested him. Wilson testified that defendant occasionally worked on cars out of the garage.

Defendant testified that the house located at 11558 South Church belonged to his sister and that he did not reside there. He sometimes worked on cars there with his brother-in-law. At the time of his arrest, he was at the side of the house turning the water off. He could not get into the garage that day because his brother-in-law had the key. On cross-examination, defendant stated that he did not see any of the officers enter the garage or take anything from it at the time of his arrest.

At the close of defendant's presentation, the State requested a directed finding on the motions, arguing that defendant lacked standing to challenge the search of the garage. The State based its argument on defendant's testimony that he did not live at 11558 South Church and on the testimony of defendant and the other two witnesses that he did not enter the garage on the date of his arrest. The court sustained the State's motion for all items that were seized in the garage, agreeing that defendant lacked standing to challenge the police search of the garage and the seizure of items found therein because he did not own the garage. The trial court also sustained the State's motion as to items seized from the backyard. The court denied the State's motion as to defendant's motion to quash his arrest on the basis of the State's failure to produce the arrest warrant. Defendant, however, later withdrew his motion to quash arrest after he was presented with the warrant.

The State proceeded to trial on case number 92 CR 3535. Detective Schulz testified that he went to 11558 South Church on the date in question to execute a warrant for defendant's arrest. Schulz stated that he arrested defendant in the garage. When he approached the garage, he saw various vehicle parts inside the garage. Defendant and two other men were in the garage. Schulz recovered from the garage a stolen 1988 Cadillac motor, hood, windshield, and other small parts as well as a transmission with the VIN removed and another hood with the VIN removed. Schulz stated that the parts he observed were from cars that had been reported stolen. The parts were seized, and defendant was arrested.

After his arrest, defendant was transported to the police station where he gave a statement. Defendant told Schulz that the house at 11558 South Church and the garage where the parts were found belonged to his sister and that he lived at a different address. He told

Schulz that he used the garage and was responsible for everything in it.

Schulz further testified that, prior to escorting defendant to the station, he made a search of the yard and discovered additional vehicle parts in the yard behind the garage. Schulz observed a transmission from a different 1988 Cadillac in the garage and the windshield from that same vehicle behind the garage. A few days after defendant's arrest, Schulz obtained a search warrant for these parts.

Jones and Wilson also testified for defendant at trial. Their testimony was substantially the same as that given at the suppression hearing. Jones added that defendant used to live at 11558 South Church. Wilson testified that he did not see defendant or the police enter the garage and confirmed that defendant sometimes used the garage.

At the close of the evidence, the trial court found defendant guilty on all charges connected with case number 92 CR 3535.

Defendant was subsequently tried for possession of a stolen motor vehicle part in case number 92 CR 3536. As we have stated, at the conclusion of the State's case in chief, the trial court granted defendant's motion for a directed finding on that charge.

Defendant was sentenced to four years' imprisonment. Defendant then pled guilty to an unrelated stalking charge. The court accepted the plea of guilty, reduced defendant's sentence on case number 92 CR 3535 from four to three years, and sentenced defendant to one year's imprisonment on the stalking charge, to be served consecutively to the three-year term.

Defendant contends that the trial court erred in denying his motion to suppress evidence seized in the search of the garage on the ground that he lacked standing to contest the search and seizure. He argues that the evidence which he presented at the suppression hearing sufficiently demonstrated that he had a reasonable expectation of privacy in the garage. We agree.

In *People v. Johnson* (1986), 114 Ill. 2d 170, 499 N.E.2d 1355, our supreme court noted that "[t]he fourth amendment protection against unreasonable government search and seizure extends only to individuals who have a reasonable expectation of privacy in the place searched or property seized." (*Johnson*, 114 Ill. 2d at 191, 499 N.E.2d at 1364, citing *Rakas v. Illinois* (1978), 439 U.S. 128, 143, 58 L. Ed. 2d 387, 401, 99 S. Ct. 421, 430; see also *People v. Davis* (1989), 187 Ill. App. 3d 265, 543 N.E.2d 154.) The *Johnson* court identified several factors which are to be considered in determining whether a defendant has standing to contest the constitutional validity of a search and seizure: (1) ownership of the property searched; (2) whether de-

fendant was legitimately present in the area searched; (3) his possessory interest in the area or property seized; (4) prior use of the area searched or property seized; (5) the ability to control or exclude others' use of the property; and (6) a subjective expectation of privacy in the property. (*Johnson*, 114 Ill. 2d at 191-92, 499 N.E.2d at 1364.) Whether a defendant has a reasonable expectation of privacy in the area searched or the items seized must be decided on the basis of the totality of the circumstances of the particular case. *Johnson*, 114 Ill. 2d at 192, 499 N.E.2d at 1364.

■ Viewing the totality of the circumstances in this case, we conclude that defendant had standing to challenge the search of the garage and seizure of evidence found within. In so concluding, we recognize initially that defendant did not have an ownership right in the garage; the record is clear that the garage was owned by his sister. However, as our supreme court noted in *Johnson* the element of ownership, while important, is not dispositive of the issue of standing. The remaining factors are of equal significance, and several are met by the facts here.

Defendant testified at the suppression hearing that he sometimes worked on cars in the garage with his brother-in-law. Jones and Wilson, neighbors of defendant's sister, both confirmed that defendant worked on cars in the garage. Jones even testified that defendant operated his business out of the garage. In addition, Jones stated that the reason defendant could not fix Jones' car on the date in question was because his tools were locked inside the garage. This evidence satisfies at least three of the factors set forth in *Johnson*. Defendant used the area searched—the garage—on prior occasions; it appears, in fact, as if he regularly used the garage, sometimes by himself and at other times with his brother-in-law. While in the garage, defendant presumably had the ability to control or exclude others' use of the property. In addition, defendant exercised ownership rights over at least some, if not all, of the items contained in the garage, as evidenced in part by the fact that he kept his tools there. Too, Schulz testified at trial that defendant told him he used the garage and was responsible for everything inside it. Finally, defendant had a subjective expectation of privacy in the garage, as evidenced by the fact that he stored his personal property there. Furthermore, defendant used to live at the South Church address and, according to one witness, still operated his business there. In light of these facts, we find defendant's subjective expectation of privacy to be reasonable and one which society would recognize as legitimate. See *People v. Janis* (1990), 139 Ill. 2d 300, 565 N.E.2d 633.

The only evidence adduced at the suppression hearing that is

arguably contrary to a finding of standing is the fact that defendant did not have a key to the garage on the date in question. This fact alone, however, is not sufficient to rebut the evidence offered by defendant showing he had standing to challenge the search and seizure.

Having determined that defendant has standing to contest the validity of the search and seizure, we next consider defendant's contention that the evidence seized in the garage should have been suppressed because the evidence he presented at the pretrial hearing proves he was arrested outside the garage, making a search of the garage interior improper. We agree with defendant that the evidence offered at the hearing leads only to the conclusion that he was arrested in the yard. However, because the trial court at the hearing sustained the State's motion for a directed finding on the basis of standing, the State did not have occasion to call any of its own witnesses in support of its contention that the arrest took place inside the garage. (Detective Schulz, in fact, testified to this effect at trial.) It would not be improper, therefore, for this court to reverse and remand for a continuation of the suppression hearing. We need not do so, however, because we find that, even if the arrest occurred inside the garage, the officers' search of the garage and seizure of evidence found inside were nevertheless improper. For the reasons which follow, we hold that evidence of the seized auto parts, on which the charges in the present case were predicated, should have been suppressed.

The fourth amendment to the United States Constitution protects people from unreasonable searches and seizures of their persons, houses, papers and effects. (U.S. Const., amend. IV.) A search conducted without a search warrant is *per se* unreasonable unless it is a search conducted pursuant to consent, a search incident to arrest, or a search predicated upon probable cause where there are exigent circumstances which make it impractical to obtain a warrant. (*People v. Harrell* (1992), 226 Ill. App. 3d 866, 589 N.E.2d 943.) A warrantless search incident to arrest is valid, provided that the search was contemporaneous with the arrest, was conducted to prevent the arrestee's seizure of a weapon or his destruction of evidence, and was limited to the area within the arrestee's immediate control. (*United States v. Queen* (7th Cir. 1988), 847 F.2d 346; *People v. Dawson* (1991), 213 Ill. App. 3d 335, 572 N.E.2d 972.) The search incident to lawful arrest exception to the warrant requirement may be expanded when used in conjunction with the plain view doctrine. Thus, a police officer may lawfully seize an item in plain view without a search warrant if he views the object from a place where he has a right to be and if the facts and circumstances known to him at the

time he acts give rise to a reasonable belief that the item seized constitutes evidence of criminal activity. *People v. Loggins* (1985), 134 Ill. App. 3d 684, 480 N.E.2d 1293.

In the present case, the police did not have a warrant to search the garage in question. The record reveals that they went to 11558 South Church on January 28, 1992, to execute a 1988 warrant for defendant's arrest on the charge of possession of a stolen engine. The officers knew that defendant did not possess this engine because it had already been recovered by police from a party who implicated defendant.

According to Schulz, the officers entered the garage where defendant and two other men were standing and saw various vehicle parts lying around. He testified that he recovered parts belonging to several 1988 Cadillac automobiles that had been reported stolen. The officers determined that the parts were stolen by examining the altered condition of the VINs affixed to these parts. The parts were seized by the police and taken to the station. Before leaving, the officers searched the yard around the garage and found at least one additional vehicle part. They did not seize this item, however, choosing instead to return a few days later with a search warrant.

■ The State does not contend that defendant consented to the search of the garage, but argues that the search of the garage was a valid search incident to his arrest. We do not agree. In our view, the scope of the officers' search exceeded that which was necessary to prevent defendant's seizure of a weapon or his destruction of evidence. It is apparent that the police were actively searching for additional stolen parts, particularly in view of their examination of the VINs affixed to these parts, which are extremely small in size and thus can be seen only from a very close vantage point. It was only after their examination of these VINs that the officers were able to arrest defendant for offenses additional to that for which he was originally arrested that day. The officers' conduct clearly exceeded a valid search incident to arrest.

The State maintains, however, that the parts and accompanying VINs were in plain view, and thus were lawfully seized during the course of the arrest. We reject this contention. As previously stated, for the seizure of an item discovered in plain view to be lawful, the police must have a reasonable belief, based on the facts and circumstances known to them at the time of the search, that the items seized constitute evidence of criminal activity. (*Loggins*, 134 Ill. App. 3d at 688, 480 N.E.2d at 1297; see also *People v. Mullens* (1978), 66 Ill. App. 3d 748, 383 N.E.2d 1369.) We find no such belief on the part of the officers here. At the time they arrested defendant, the police

knew only that some three years earlier defendant had been implicated in the possession of a stolen car engine, which engine had already been recovered. The police knew of no additional facts sufficient to support a reasonable belief that the parts which were in the garage constituted evidence of a crime. Only after they read the VINs did the officers have sufficient facts to support a reasonable belief of further criminal activity on the part of defendant. Under these circumstances, the plain view exception to the warrant requirement does not apply.

Furthermore, the record here is devoid of any evidence that exigent circumstances existed which made it impractical for the police to obtain a search warrant before they seized the parts from the garage. There was, in our view, virtually no chance of the evidence being destroyed. Indeed, the record indicates that the police did, in fact, obtain a warrant for two of the seized auto parts which were eventually used against defendant and found the parts intact when they returned a few days after defendant's arrest to retrieve them.

As to the two parts that were seized pursuant to the search warrant, defendant contends that they, too, should have been suppressed. Defendant argues that the windshield found behind the garage was improperly seized because the police had no right to search that area in the first instance, given that he was apparently determined to have been arrested inside the garage. He further argues that the initial search during which the windshield was discovered and a second inspection by police during which the windshield was confirmed to be stolen were not supported by any exception to the warrant requirement. We agree and accordingly hold that evidence of the stolen windshield should have been suppressed as the product of an unlawful search. We also find that the other part seized pursuant to the search warrant, which was found inside the garage, should also have been suppressed, as the police obtained evidence of this part by virtue of the initial unlawful search of the garage.

In support of its contention that the seizure of the auto parts was valid, the State argues that the law does not recognize a reasonable expectation of privacy in a VIN. We acknowledge that, in those instances where the inspection of a VIN occurs in the course of a police stop of a moving vehicle driven on an open roadway by a suspect, courts have generally held that no reasonable expectation of privacy in the VIN exists. (See, *e.g.*, *New York v. Class* (1986), 475 U.S. 106, 89 L. Ed. 2d 81, 106 S. Ct. 960; *People v. Wolf* (1975), 60 Ill. 2d 230, 326 N.E.2d 766.) This is so because, unless the police ascertain the status of the vehicle and driver at that time, they will likely not have another opportunity to do so once the vehicle has been driven away.

This case, however, poses a situation wholly distinct from the typical police stop of a moving vehicle. Here, the VINs were affixed to vehicle parts which, at the time of their seizure, were in the nature of personal effects found in a place in which defendant had a reasonable expectation of privacy. Unlike a mobile vehicle, these parts were unlikely to move away before the police could secure a warrant. We believe this distinction is significant in ascertaining whether defendant had a reasonable expectation of privacy in the VINs themselves.

In *People v. Piper* (1981), 101 Ill. App. 3d 296, 427 N.E.2d 1361, the court had occasion to address the question which we now face, albeit under different factual circumstances. These factual differences do not, however, undermine the significance of the *Piper* court's analysis in the present case. To the contrary, despite the factual distinctions, the *Piper* decision persuades us that defendant here had a legitimate expectation of privacy in the VINs affixed to the parts seized from the garage.

In *Piper*, the issue raised by the defendant was whether opening the door of a vehicle by police to examine the VIN on the door post in the course of a routine accident investigation, without the permission of the driver, constituted an illegal search. In holding that it did, the court concluded:

> "[T]he analysis of whether a police investigation should be deemed a search and therefore subject to fourth amendment restraints must weigh the reasonableness of one's privacy interest in the instrumentality, and the particular area of the instrumentality upon which the VIN is inscribed, and not just the reasonableness of the privacy interest in the number itself. Thus, while the examination of a VIN, inscribed on the dashboard of a car which is in plain view of a policeman *** looking through the windshield from outside would not be a fourth amendment search because it is not a 'prying into hidden places for that which is concealed' [citation], by the same standard the examination of a VIN which can be observed only when a policeman has opened the door may well constitute a search of that portion of the vehicle otherwise concealed from public view. Although one's expectation of privacy in the number may be no different, it is surely a matter of common sense that one's expectation of privacy in that which can be seen from outside the car is significantly different from that which can be seen only when the door has been opened. Otherwise, why bother to put things in the glove compartment, under the seat, or, as here, behind the seat and out of the view of passers-by?

We therefore reject the State's contention that one can have no reasonable expectation of privacy in a VIN, regardless of its location on, or in, the vehicle, or the circumstances of the police

investigation. Where, as here, the VIN can be seen by the policeman only when he himself has opened the door to the vehicle, a search has begun." *Piper*, 101 Ill. App. 3d at 301-02, 427 N.E.2d at 1364.

The court went on to state that, in the absence of any articulable facts upon which the police might reasonably suspect the car was stolen, no sound policy interest existed to justify the intrusion of opening a vehicle door to ascertain the VIN under the circumstances of that case. *Piper*, 101 Ill. App. 3d at 305, 427 N.E.2d at 1367.

■ Applying the *Piper* court's analysis here, our focus must be, not on the reasonableness of the privacy interest in the VINs themselves, but on the reasonableness of the privacy interest in the instrumentality or instrumentalities on which the VINS were found. As our earlier discussion indicates, defendant had a reasonable expectation of privacy in the garage and also of the contents contained therein. Moreover, as stated, when the police arrived at 11558 South Church to arrest defendant, they knew only that defendant was suspected of possessing a stolen automobile engine some three years earlier, and they also knew that defendant did not possess that engine, as it had been seized by the police from a different location long before that date. The police did not know at that time of any articulable facts upon which they might reasonably suspect that the car parts found in the garage were also stolen. It was only after they examined the VINs that the police acquired the requisite articulable facts upon which to base their arrest of defendant for the additional charges in case number 92 CR 3535. We conclude that their examination of the VINs in this case is tantamount to the act of opening a car door to search for the VIN, as occurred in *Piper*. We reject the State's contention that the VINs, like the VIN which can be seen from the exterior of a car, were in plain view. Rather, the dictates of common sense lead us to accept defendant's contention that the police could not possibly have read the tiny VINs without manipulating at least some of the individual auto parts on which they were found.

Moreover, even were we to reject the inference that the police actually picked up the loose auto parts to discover the concealed VINs, the introduction of the auto parts into evidence was still improper because the incriminating nature of the parts could not have been immediately apparent to the officers upon their entry into the garage, as required under the plain view doctrine. (*People v. Mullens*, 66 Ill. App. 3d 748, 383 N.E.2d 1369.) It was only after they searched for and read the long sequences of numbers and letters comprising the VINs that the incriminating nature of the parts

became apparent to the officers. This is impermissible under the fourth amendment. The officers could have obtained a warrant to search the garage and seize the parts in question. Indeed, there is no justifiable reason in the record why they failed to do so. For this and the other reasons discussed, we hold that the trial court erred in denying defendant's motion to suppress evidence and quash his arrest under case number 92 CR 3535.

Because the trial court's finding of guilty in case number 92 CR 3535 was contingent in large part upon the evidence of the seized auto parts found in the garage, we conclude that, absent this evidence, a guilty verdict could not stand. Accordingly, we decline to remand this cause for a new trial. In light of our holding, we need not address the remaining issues which defendant raises on appeal.

For the foregoing reasons, the judgment of the circuit court of Cook County in case number 92 CR 3535 is reversed.

Judgment reversed.

RAKOWSKI and ZWICK, JJ., concur.