2023 IL App (1st) 220604-U

No. 1-22-0604

Order filed November 8, 2023

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 07 CR 22774 |
| | ) | |
| TERRY HAWKINS, | ) | Honorable |
| | ) | Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE R. VAN TINE delivered the judgment of the court.
Presiding Justice Reyes and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1     *Held*:  We affirm the first-stage dismissal of defendant's postconviction petition alleging ineffective assistance of trial counsel for failing to file a motion to suppress evidence obtained during a search of defendant's apartment and ineffective assistance of appellate counsel for failing to raise that claim of ineffective assistance of trial counsel because defendant cannot establish even arguable prejudice as to either claim.

¶ 2     Following a bench trial, defendant Terry Hawkins was found guilty of three counts of

aggravated criminal sexual assault and four counts of aggravated kidnapping and was sentenced

to 21 years in prison. On direct appeal, we affirmed defendant's sentences over his contention that three consecutive seven-year sentences on the aggravated criminal sexual assault counts violated the proportionate penalties clause of the Illinois Constitution. *People v. Hawkins*, 409 Ill. App. 3d 564, 564-65 (2011). Defendant then filed a *pro se* petition for postconviction relief, alleging that trial counsel rendered ineffective assistance by failing to file a motion to suppress a license plate and photographs obtained during a warrantless search of his apartment, and that counsel on direct appeal rendered ineffective assistance by not raising that claim of ineffective assistance of trial counsel. Defendant now appeals from the first-stage dismissal of his petition, contending that he raised arguable claims of ineffective assistance of trial and appellate counsel. For the following reasons, we affirm.

¶ 3                                  I. BACKGROUND

¶ 4      Defendant was charged with a total of 24 counts of aggravated criminal sexual assault (720 ILCS 5/12-14(a)(1), (4), (7) (West 2006)), criminal sexual assault (720 ILCS 5/12-13(a)(1) (West 2006)), aggravated kidnapping (720 ILCS 5/10-2(a)(3), (5) (West 2006)), and kidnapping (720 ILCS 5/10-1(a)(1), (2) (West 2006)) arising out of his assault of J.R. on September 28 and 29, 2007.[1] Prior to trial, counsel did not file a motion to suppress.

¶ 5      At trial, J.R. testified that she was 13 years old in September 2007. At approximately 10 p.m. on September 28, 2007, she left her house to visit a friend. As J.R. was walking through an alley, a dark-colored vehicle with a missing rear window approached her. Defendant, whom J.R. identified in court, was the driver and the only person inside the vehicle. Defendant told J.R. to get

_____

[1] J.R. is now an adult. We use her initials to protect her privacy as she was a minor at the time of the incident. See *People v. Munoz-Salgado*, 2016 IL App (2d) 140325, ¶ 1 n. 1.

in the vehicle. J.R. ran and defendant chased her on foot while holding a small knife. Defendant caught up to J.R., pulled her into the vehicle, and shoved her onto the floor beneath the front passenger seat while brandishing the knife. Defendant drove to a liquor store and told J.R. that "there was some guys that was keeping a watch on [her] to see if [she] will get out" and that they would "hit" or "do something bad to her" if she tried to escape. J.R. saw a group of men standing outside the vehicle. She also noticed a water bottle and sugar packets in the vehicle's back seat.

¶ 6    Defendant entered the store, returned to the vehicle, drove to a two-floor apartment building, and forced J.R. into the bedroom of a first-floor apartment at knifepoint. J.R. sat on the bed while defendant cut up cocaine with a razor. Defendant did not brandish the knife in the bedroom. He forced J.R. to smoke a cigarette that she believed contained cocaine and to drink a beer, most of which spilled down the front of J.R.'s shirt. J.R. fell asleep and, when she awoke, her pants and underwear had been pulled down. Defendant told J.R. to perform oral sex on him and to remove her pants and underwear; she did both. Defendant then placed his finger in, and his tongue on, J.R.'s vagina. Someone knocked at the apartment's front door and defendant went to answer it; J.R. heard him arguing with another man. Defendant left the bedroom approximately five times to sell cocaine to visitors at the front door, but J.R. could not leave the bedroom because the bedroom door was locked, and the window would not open. On one occasion when defendant answered the front door, J.R. saw that his back was turned and the bedroom door was unlocked, so she got dressed and jumped out of a living room window. The right side of her face struck grass and rocks when she landed.

¶ 7    J.R. went to a nearby house and hid on its front porch. The owner of the house, Erica, arrived and took J.R. to a police station. J.R. spoke to police officers and then went to Holy Cross

Hospital, where she described defendant's assault to hospital staff who examined her. J.R. identified defendant to police in a photo array on October 3, 2007, and in a lineup on October 13, 2007. At trial, she identified the photo array and a photograph of the lineup, as well as photographs of the bedroom in which defendant assaulted her, the living room and window through which she escaped, the injuries she sustained when she jumped out of defendant's apartment window, and the exterior of defendant's apartment building. The State entered all these photographs into evidence.

¶ 8    Erica Mascio testified that she lived near the intersection of West 67th Street and South California Avenue. As she was returning home at approximately 6 a.m. on September 29, 2007, she saw J.R. on her front porch. J.R.'s right cheek was injured, and she was crying and shaking. J.R. said that someone made her drink alcohol and fondled her, and that she had jumped out of a window. Mascio took J.R. to a police station, and police transported J.R. to a hospital.

¶ 9    Chicago police officer John Bertetto testified that he interviewed J.R. and Mascio at a police station at approximately 7 a.m. on September 29, 2007, then transported J.R. to Holy Cross Hospital.

¶ 10    Judith Todd testified that she was an emergency room nurse at Holy Cross Hospital; she examined J.R. on the morning of September 29, 2007. J.R. said that defendant forced her into a vehicle, took her to an unknown location, forced her to perform oral sex on him, put his finger in her vagina, and performed oral sex on her. J.R. had abrasions on her face. Todd performed a sexual assault kit, including oral and vaginal swabs. J.R.'s toxicology tests were negative. Todd identified the sexual assault kit and its contents, which the State moved into evidence.

¶ 11    Evidence technician Michael Parker testified that he retrieved a sexual assault kit and a bag of clothing from Holy Cross Hospital and inventoried them on September 29, 2007.

¶ 12    Detective Mathews interviewed J.R. at Holy Cross Hospital on September 29, 2007.[2] The following day, Mathews drove J.R. around the area of 67th and California to determine if she could identify the location where defendant assaulted her. J.R. saw a group of people standing in front of an apartment building on the 2700 block of West 66th Street and thought that one of them might be defendant. Mathews drove around the block and called for assistance but, during that time, the man that J.R. thought might be defendant left the area. Mathews spoke to one of the residents of that building, John Mock, who said that someone with the nickname "T" lived in the building. On October 3, 2007, Mathews saw a vehicle with a broken rear driver-side window on Fairfield Avenue near 67th Street, which matched J.R.'s description of defendant's vehicle. Mathews saw a water bottle and sugar packets in the vehicle's rear seat. A computer check of the vehicle's license plate revealed that defendant was the owner.

¶ 13    John Mock testified that, in September and October 2007, defendant lived in a first-floor apartment of a two-floor building on the 2700 block of West 66th Street and that defendant's nickname was "T."

¶ 14    Officer Gustavo Cortes testified that, on October 13, 2007, he received information from the Fugitive Apprehension Unit that defendant was at the apartment building on the 2700 block of West 66th Street. Cortes had a photograph of, and an investigative alert for, defendant. Cortes knocked on the door of defendant's apartment; defendant answered and identified himself but

---

[2] Detective Mathews did not provide a first name.

refused to open the door. Approximately 45 minutes later, Cortes saw defendant leave his apartment building on foot, arrested him, and transported him to a police station.

¶ 15    Howard Naugles testified that he performed maintenance work at the apartment building on the 2700 block of West 66th Street but was not the owner of the building. Defendant lived alone in an apartment that belonged to a man named Cornell Pryor as Pryor was ill and in a nursing home. In mid-October 2007, Naugles met police at the building and entered defendant's apartment. It appeared that "someone was living there, but *** it was kind of like they were living in squalor conditions."

¶ 16    Detective Dewilda Gordon testified that he went to defendant's apartment building on the 2700 block of West 66th Street on October 17, 2007. Naugles opened the door to defendant's apartment; Gordon entered and saw that one of the living room window screens was broken. Gordon searched the apartment and recovered the license plate of defendant's vehicle from the living room floor. An evidence technician inventoried the license plate and took photographs of the interior of the apartment. Gordon identified the license plate and the photographs of defendant's apartment, which the State moved into evidence.

¶ 17    The parties stipulated that a State's Attorney's Office investigator collected a buccal swab from defendant on May 13, 2008, and inventoried it at the Chicago Police Department. Illinois State Police forensic scientist Karri Broadus was qualified as an expert in forensic biology and DNA analysis. She conducted DNA analysis on J.R.'s vaginal swabs and defendant's buccal swabs. Broadus identified a partial DNA profile on the vaginal swabs that matched defendant. She also identified defendant's buccal swabs and the State moved them into evidence.

¶ 18    The court dismissed the counts alleging that defendant displayed a knife during the act of sexual penetration. The court then found defendant guilty of three counts of aggravated criminal sexual assault premised on contact between defendant's penis and J.R.'s mouth, defendant's finger and J.R.'s vagina, and defendant's mouth and J.R.'s vagina, as well as four counts of aggravated kidnapping.

¶ 19    Defendant filed a motion for new trial, which challenged the sufficiency of the evidence but did not raise any claims of ineffective assistance of counsel. The court denied defendant's motion and sentenced him to 7 years' imprisonment on each of the 3 counts of aggravated criminal sexual assault, to be served consecutively, for a total sentence of 21 years.[3]

¶ 20    On direct appeal, defendant challenged only his three consecutive seven-year sentences on each count of aggravated criminal sexual assault. *Hawkins*, 409 Ill. App. 3d at 564-65. He argued that his sentences violated the proportionate penalties clause of the Illinois Constitution. *Id.* at 565. This court affirmed. *Id.*

¶ 21    Defendant filed a *pro se* postconviction petition alleging numerous grounds of ineffective assistance of trial and appellate counsel, as well as errors during trial and various constitutional violations. Relevant here, defendant alleged that trial counsel rendered ineffective assistance by failing to file a motion to suppress the evidence obtained during the warrantless search of his apartment and that appellate counsel rendered ineffective assistance by failing to raise that claim of ineffective assistance of trial counsel. The trial court dismissed defendant's petition at the first stage, finding that his claim of ineffective assistance of trial counsel based on the "failure to move

_____

[3] It appears that the trial court merged the four aggravated criminal kidnapping counts into the three aggravated criminal sexual assault counts. Defendant was sentenced on only the aggravated sexual assault counts.

to suppress identification of [his] vehicle" was "meritless," and that appellate counsel was not ineffective for deciding not to raise that meritless claim.

¶ 22   We granted defendant leave to file a late notice of appeal.

¶ 23                                    II. ANALYSIS

¶ 24   On appeal, defendant contends that he raised arguable claims of ineffective assistance of trial and appellate counsel premised on the failure to challenge the warrantless search of his apartment, which led to the recovery and use at trial of his license plate and photographs of the apartment's interior.

¶ 25   The Post-Conviction Hearing Act provides a three-stage mechanism by which a criminal defendant can assert that his conviction was the result of a substantial denial of his constitutional rights. *People v. Myles*, 2020 IL App (1st) 171964, ¶ 17 (citing *People v. Pendleton*, 223 Ill. 2d 458, 471-73 (2006)). At the first stage of postconviction proceedings, the court must determine whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2020). "A postconviction petition is frivolous or patently without merit when its allegations, taken as true and liberally construed, fail to present the gist of a constitutional claim." *People v. Harris*, 224 Ill. 2d 115, 126 (2007). Put differently, a petition is frivolous or patently without merit when it has no arguable basis in law or fact. *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). A petition lacks an arguable basis in law or fact if it is "based on an indisputably meritless legal theory," "completely contradicted by the record," or contains "a fanciful factual allegation." *Id.* At the first stage, the court cannot engage in fact-finding or credibility determinations; rather, it must accept well-pled allegations as true unless they are positively rebutted by the trial record. *People v. Dixon*,

2022 IL App (1st) 200162, ¶ 30. If the court concludes that the petition is frivolous or patently without merit, it must dismiss the petition. 725 ILCS 5/122-2.1(a)(2) (West 2020).

¶ 26    We review the first-stage dismissal of a postconviction petition *de novo* (*Hodges*, 234 Ill. 2d at 9), meaning that we perform the same analysis as the trial court (*People v. Tyler*, 2015 IL App (1st) 123470, ¶ 151). We construe *pro se* petitions liberally and allow borderline cases to proceed. *People v. Mars*, 2012 IL App (2d) 110695, ¶ 32. A *pro se* petition need not allege facts supporting all elements of a constitutional claim (*id.*), but it must "clearly set forth" how the petitioner's constitutional rights were violated. *Hodges*, 234 Ill. 2d at 9).

¶ 27    Defendant could have, on direct appeal, raised his claim of ineffective assistance of trial counsel premised on counsel's failure to file a motion to suppress that challenged the legality of the search of defendant's apartment, but he did not. Typically, that would result in forfeiture of this claim because the purpose of postconviction proceedings is to allow inquiry into constitutional issues that could not have been adjudicated on direct appeal. See *People v. English*, 2013 IL 112890, ¶ 22. However, the doctrine of forfeiture is "relaxed *** where the forfeiture stems from the ineffective assistance of appellate counsel." *Id.* That is the case here; defendant alleges that appellate counsel rendered ineffective assistance by failing to raise trial counsel's ineffectiveness. Furthermore, the State does not argue forfeiture, so it has forfeited defendant's forfeiture of these claims. See *People v. Jones*, 2018 IL App (1st) 151307, ¶ 47. We will address defendant's claims on the merits.

¶ 28    A criminal defendant has the constitutional right to the effective assistance of counsel. U.S. Const. amends. VI, XIV; Ill. Const. 1970, art. I, § 8; *Strickland v. Washington*, 466 U.S. 668, 684-86 (1984). A defendant may raise a claim of ineffective assistance of counsel under the Act. *People*

*v. King*, 316 Ill. App. 3d 901, 912 (2000). We evaluate a claim of ineffective assistance of counsel under the two-pronged test of *Strickland*. *People v. Albanese*, 104 Ill. 2d 504, 525-26 (1984). First, a defendant alleging ineffective assistance must demonstrate that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Second, the defendant must show that he suffered prejudice due to counsel's deficient performance. *Id.* In this case, the issue of prejudice concerns whether (1) a motion to suppress challenging the warrantless search of defendant's apartment arguably would have been successful and (2) if so, whether the outcome of trial arguably would have been different. See *Hodges*, 234 Ill. 2d at 16; *People v. Givens*, 237 Ill. 2d 311, 331 (2010). We can only find ineffective assistance if defendant establishes both prongs of the *Strickland* test. See *Strickland*, 466 U.S. at 687. We address the prejudice prong first. See *People v. Hale*, 2013 IL 113140, ¶ 17 (a court may proceed directly to the prejudice prong without addressing the objective reasonableness of counsel's performance).

¶ 29    The fourth amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. "The chief evil against which the fourth amendment to the United States constitution is directed is the physical entry of the home." *People v. Davis*, 398 Ill. App. 3d 940, 948 (2010) (citing *Payton v. New York*, 445 U.S. 573, 585 (1980)). A warrantless search of a home is presumptively unreasonable unless it is conducted pursuant to consent, incident to an arrest, or is based on probable cause and exigent circumstances that make it impractical to obtain a warrant. *People v. Alexander*, 272 Ill. App. 3d 698, 704 (1995). Pursuant to the

exclusionary rule, courts cannot admit evidence that police obtained in violation of the fourth amendment. *People v. Sutherland*, 223 Ill. 2d 187, 227 (2006).

¶ 30   We find that defendant cannot establish prejudice with respect to his claim of ineffective assistance of trial counsel. First, even if counsel had filed a motion to suppress, and even if the court found that the search of defendant's apartment was unlawful, that would not have resulted in the suppression of defendant's license plate. Two weeks before Gordon's search of defendant's apartment, Mathews saw the license plate when defendant's vehicle was parked in public view on Fairfield Avenue. Mathews's observation of defendant's license plate was lawful. See *People v. Redman*, 386 Ill. App. 3d 409, 419 (2008) ("A search does not occur when officers observe what is in open view.") (citing *People v. Berg*, 67 Ill. 2d 65, 68 (1977)). Pursuant to the independent source doctrine, the exclusionary rule does not apply when police had an independent and lawful source for discovering evidence, even if the evidence was also obtained by unlawful means in a separate search. *Murray v. United States*, 487 U.S. 533, 535-42 (1988); *Nix v. Williams*, 467 U.S. 431, 443 (1984) (independent source doctrine allows admission of evidence that has been discovered by means wholly independent of unlawful activity); *People v. Davis*, 2021 IL 126435, ¶ 9 (acknowledging independent source doctrine). Even if Detective Gordon's recovery of the license plate was the product of an unlawful search, Detective Mathews still would have testified to his independent, lawful observation of the license plate and the computer search that connected it to defendant, just as he did at trial.

¶ 31   Regardless, we need not decide whether a motion to suppress defendant's license plate or the photographs of his apartment would have been successful. Even if such a motion had been filed and granted, there is no possibility that the outcome of trial would have been different. The

evidence of defendant's guilt was overwhelming. DNA from J.R.'s vaginal swab matched DNA from defendant's buccal swab, indicating that some part of defendant's body contacted J.R.'s vagina. J.R. identified defendant in a photo array 5 days after the assault, in a lineup 15 days after the assault, and at trial. Defendant's vehicle matched J.R.'s description; specifically, its broken rear driver-side window and the back seat containing a water bottle and sugar packets. Photographs of J.R.'s injuries corroborated her testimony that she escaped defendant's apartment by jumping through the living room window and into the bushes. J.R. also described defendant's assault to multiple witnesses, such as Mascio, Todd, and Mathews. The State established defendant's guilt by witness testimony, multiple identifications, and physical and scientific evidence. There is no possibility that a successful motion to suppress defendant's license plate and photographs of his apartment would have transformed the trial court's finding of guilt into an acquittal.

¶ 32    While defendant had no obligation to introduce evidence at trial (see *People v. Piatkowski*, 225 Ill. 2d 551, 567 (2007)), we note how limited his challenge to the State's evidence was. Defendant did not dispute that he took J.R. to his apartment or that he engaged in nonconsensual sex with her. He only disputed whether he used force and whether J.R. was credible. The suppression of defendant's license plate and photographs of his apartment would not have made it possible for him to argue, instead, that he did not sexually assault J.R. or that she was never in his apartment.

¶ 33    Defendant argues that the trial court relied on the license plate and the photographs of his apartment to corroborate J.R.'s version of events. That may be true, but it does not mean that the outcome of trial arguably would have been different had that evidence been suppressed. The trial court could and would have found defendant guilty even without the evidence at issue. The State

was not obligated to introduce any corroborating physical evidence (see *People v. Herron*, 2012 IL App (1st) 090663, ¶ 23), and the trial court could have found defendant guilty based solely on J.R.'s testimony (see *People v. Starks*, 2014 IL App (1st) 121169, ¶ 48). Although the license plate and apartment photographs may have "helped bolster the State's case," they were not essential to proving defendant's guilt. The question is not whether the license plate and photographs had *some impact* on the trial; rather, it is whether the outcome of trial arguably would have been different without that evidence. See *People v. Little*, 2021 IL App (1st) 191108, ¶ 18. While defendant is correct that "it is at least arguable that the judge relied on this corroborating evidence," it is not arguable that the trial court would have *acquitted* defendant in the absence of this evidence. Accordingly, we find that the trial court correctly dismissed defendant's postconviction claim of ineffective assistance of trial counsel at the first stage.

¶ 34 Because defendant's claim of ineffective assistance of trial counsel is without merit, he cannot establish that he suffered prejudice because of appellate counsel's failure to raise that meritless claim on appeal. See *People v. Dixon*, 2022 IL App (1st) 200162, ¶ 32 (citing *People v. Childress*, 191 Ill. 2d 168, 175 (2000)). Accordingly, we hold that the trial court properly dismissed defendant's claim of ineffective assistance of appellate counsel as well.

¶ 35                                    III. CONCLUSION

¶ 36 For the foregoing reasons, we affirm the circuit court's summary dismissal of defendant's postconviction petition.

¶ 37 Affirmed.