No. 2--05--0050

_____

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) ) | |
| v. | ) ) | No. 03--CF--1505 |
| FRANCISCO ALVARADO, | ) ) | Honorable Grant S. Wegner, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

_____

JUSTICE O'MALLEY delivered the opinion of the court:

Following a jury trial in the circuit court of Kane County, defendant, Francisco Alvarado, appeals his conviction of delivery of cocaine within 1,000 feet of a church (720 ILCS 570/401(d), 407(b)(2) (West 2002)).  Defendant contends that, during jury selection, the State impermissibly used a peremptory challenge to exclude a potential juror on the basis of her race, in violation of the rule set forth in Batson v. Kentucky, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986).  Defendant also contends that there was insufficient evidence to convict him of cocaine delivery beyond a reasonable doubt.  We remand for completion of the Batson hearing.

I.  BACKGROUND

On August 14, 2003, defendant was arrested.  Before trial, defendant filed a motion to suppress his statement to police, contending that he had requested an attorney and that the statement was otherwise involuntary.  Following a hearing at which the officers who attended defendant's interview and defendant testified, the trial court denied defendant's motion to suppress.  The matter proceeded to a jury trial.

During the voir dire of the venire, the State questioned Norma Franco.  Franco indicated that, about 15 or 16 years ago, her older sister was involved with drugs and sought help in ultimately overcoming her drug problem.  Franco stated that she was not close to her sister at that time and was not involved in her sister's rehabilitation and treatment.  Franco indicated that her sister had not had contact with the criminal justice system as a result of her drug use.  The State did not ask Franco individually any other questions regarding her family and her ability to serve on defendant's jury.  Following its questioning of the venire panel, the State used one of its peremptory challenges to exclude Franco.  Defendant objected, and at a side bar, the following colloquy occurred:

"MR. ZUELKE [Defense Counsel]:  I don't know, Judge, I think I would make a challenge to that at this time.  She is the only--to me appears to be the only Mexican, of Mexican descent person we have in this entire venire.  Her answers to me didn't indicate anything different than any other answers, so I would make a challenge to their challenge, your Honor.

MS. LUND [Assistant State's Attorney]:  Judge, if I may.  Thank you.  The Defendant has not shown a prima facie case for Batson.  First of all, there is no indication she is Hispanic.

Second of all, she indicated to a question to Miss Kirch [assistant State's Attorney] that she has a sister that was involved with drugs. That would be a major concern for State.

Third, if you notice from her questionnaire, she has four children. They are very small. We were concerned about her attention and her time in this matter, considering she is young and has four children at home that would make it difficult to sit on the case for a day and a half.

But most importantly the reason the State struck her had to do with issues regarding a relative involved in narcotics. Nothing to do with her origins.

MR. ZUELKE: Miss Quinn [(prospective juror)] has two relatives with drug problems and Mr. Malenke [(prospective juror)] has a friend that got 8 years for selling drugs in another state.

MS. LUND: Obviously we're not here to challenge the other people. They were kept on for independent reasons.

THE COURT: Under the circumstances I'm going to deny your request."

The State used other peremptory challenges to strike other potential jurors, but no further Batson objections were raised.

Following the completion of voir dire and the selection of the jury, the trial court revisited the Batson issue over Franco:

"I know we've been going way beyond the hour and a half, but the Batson issue that you raised, I do want to make some additional comments that I didn't at the time simply because of the timing.

I think we all recognize as it relates to <u>Batson</u> that there is really a three-step process in that regard. The first is for defendant to establish a <u>prima facie</u> case of purposeful discrimination by showing that the totality of the relevant facts give rise to an inference of discriminatory purpose. The defendant must show that he is a member of a cognizable racial group being singled out for differential treatment.

The Defendant must demonstrate the following: That is he [is] a member of a cognizable racial group; that the State exercised peremptory challenges to remove venire members of the defendant's race; the facts and any relevant circumstance in the case raise an inference that the State exercised peremptory challenges to remove the prospective jurors based upon race.

And there are a number of relevant circumstances to consider in that regard: Racial identity between the defendant and the excluded juror; pattern of strikes against the cognizable group on a disproportionate basis; level of representation of the juror compared to the rest of the jurors; questions propounded prior to challenging the juror; the race of defendant, victim, and other witnesses.

And under those circumstances I again indicate that for purposes of this record I don't believe the Defendant has made their [sic] <u>prima facie</u> showing."[1]

---

[1]We note that the trial court's recitation of the rules of law governing a <u>Batson</u> challenge is not entirely accurate. For example, the trial court would apparently allow a <u>Batson</u> challenge only where the defendant and the excluded juror share the same race. The trial court's grasp of the nuances of <u>Batson</u>, however, is not at issue; in any event, the trial court correctly set forth the three stages required to conduct a <u>Batson</u> hearing. We note further that, while the trial court's statement of the law should not be accepted as

Defendant then requested the trial court to preserve all of the juror profiles for the record and the trial court appeared to agree to do so.

Following the trial, defendant was found guilty. Defendant's motion for a new trial was denied and defendant was sentenced to a term of imprisonment of four years. Defendant timely appeals.

## II. ANALYSIS

On appeal, defendant raises two issues. First, defendant argues that the trial court did not properly hold a Batson hearing regarding his objection to the State's use of a peremptory challenge against juror Franco. Defendant contends that the trial court improperly collapsed the procedure and erroneously determined that defendant had not made a prima facie showing of racial discrimination. Alternatively, defendant argues that the State's reasons for exercising its peremptory challenge against juror Franco were pretextual, requiring that he receive a new trial. Defendant's second contention on appeal is that, due to shoddy police work and record keeping, a reasonable doubt exists as to

accurate but only as what the trial court stated when conducting the Batson hearing at issue here, our statement of the law below is accurate and governs our disposition here.

whether he was the individual who sold the cocaine and, therefore, his conviction should be reversed.

Defendant first contends that the trial court erred in its evaluation of his objection, pursuant to Batson, to the State's use of a peremptory challenge against Franco to exclude her from jury service in this case. According to defendant, Franco was the only Hispanic person in the venire and, when comparing her responses to voir dire questioning with those of others whom the State did not seek to exclude, the inference arises that the State struck Franco because of her race. We first review the principles governing a Batson inquiry before addressing defendant's arguments in detail.

Batson articulated a three-step process to evaluate a claim that the State exercised its peremptory challenges in a discriminatory manner. Batson, 476 U.S. at 96-98, 90 L. Ed. 2d at 87-89, 108 S. Ct. at 1723-24; People v. Williams, 173 Ill. 2d 48, 70 (1996).

"First, the defendant must establish a prima facie case of purposeful discrimination in the selection of the jury. Once the defendant establishes a prima facie case, the burden shifts to the State to articulate a race-neutral reason for challenging each of the venirepersons in question. Finally, the trial judge must consider those explanations and determine whether the defendant has met his burden of establishing purposeful discrimination." Williams, 173 Ill. 2d at 70-71.

A defendant makes a prima facie showing of discrimination under Batson by demonstrating that the relevant circumstances in the case raise an inference that the prosecutor exercised peremptory challenges to remove potential jurors based on their race. Williams, 173 Ill. 2d at 71. To assist the court in determining whether a prima facie case of

discrimination in jury selection has been established, the following factors should be considered:

"(1) racial identity between the defendant and the excluded venirepersons; (2) a pattern of strikes against [a cognizable racial group of] venirepersons; (3) a disproportionate use of peremptory challenges against [a cognizable racial group of] venirepersons; (4) the level of [the cognizable racial group's] representation in the venire as compared to the jury; (5) the prosecutor's questions and statements during voir dire examination and while exercising peremptory challenges; (6) whether the excluded [venirepersons of a cognizable racial group] were a heterogeneous group sharing race as their only common characteristic; and (7) the race of the defendant, victim, and witnesses." Williams, 173 Ill. 2d at 71.

These factors, however, are not all-inclusive. People v. Davis, 345 Ill. App. 3d 901, 903 (2004). The trial court's determination on whether the defendant has established a prima facie case will not be disturbed unless it is against the manifest weight of the evidence. Williams, 173 Ill. 2d at 71. With these principles in mind, we turn to the circumstances confronting the trial court here.

The State questioned the panel, including Franco, during voir dire. When the State concluded its questioning, the prosecutor said, "Judge, with thanks, the People would excuse Miss Franco." Defendant made his Batson objection, arguing that Franco was the only Hispanic person in the venire and that her answers to questioning were not significantly different from those of other, non-Hispanic venirepersons who were accepted by the State. The State disagreed, first arguing that defendant had not made a prima facie case because there was no indication that Franco was Hispanic, and then pointing out that

Franco had a sister who had been involved with drugs and that she had small children at home. The court then immediately denied defendant's Batson objection. Later, after the jury had been selected, the trial court stated that it wished to supplement the record on the Batson objection and specifically stated that it denied defendant's objection because defendant had not established a prima facie case of purposeful discrimination.

Defendant first contends that the trial court erred in the manner in which it held the Batson hearing. According to defendant, it was unclear as to what stage the hearing was in or what basis the trial court used to justify its ruling. From this, defendant concludes that the trial court did not properly hold a Batson hearing, and he requests that the judgment be reversed and the case remanded for such a hearing. We disagree with defendant's premise.

We are cognizant of the exigencies facing a trial court in seating a jury. Here, defendant raised an objection that the State excluded a prospective juror on the basis of race. The State disagreed and the trial court ruled. We find, on the record before us, that the trial court was clearly in the first stage of the three-part Batson inquiry. This is confirmed because the trial court supplemented the record and explicitly stated that defendant had not made a prima facie showing of purposeful racial discrimination on the part of the State. Had the trial court not supplemented the record, we would have had a more difficult time in determining where in the Batson process the trial court was when it ruled. This is why our supreme court has stressed the importance of conducting an orderly and clear hearing when confronted with a Batson issue. See, e.g., People v. Garrett, 139 Ill. 2d 189, 200 (1990) (Batson challenge must be evaluated in methodical manner); People v. Hope, 137 Ill. 2d 430, 456 (1990), vacated, 501 U.S. 1202, 115 L. Ed. 2d 966,

111 S. Ct. 2792 (1991), modified, 147 Ill. 2d 315 (1992) (Batson hearing should proceed methodically and step-by-step).  Nevertheless, based on the record before us, we hold that the trial court ruled that defendant had not made out a prima facie case of racial discrimination in the exclusion of Franco and then terminated the Batson hearing.

Defendant next challenges the propriety of the trial court's determination on whether defendant made a prima facie case.  The State points out that the record is devoid of any indication of Franco's race.  According to the State, this failure in the record must prohibit us from reviewing the trial court's determination further, effectively resulting in defendant waiving his claim.  (The State supports its argument with a citation to People v. Harris, 129 Ill. 2d 123, 171-72 (1989) (holding that a challenge to the State's utilization of a peremptory challenge may not be maintained on appeal unless there is evidence in the record establishing the excluded juror's race).)  Contrary to the State's claim, we find there to be sufficient evidence in the record to evaluate defendant's claim that the trial court's determination that he did not make a prima facie case was erroneous.

Here, defense counsel objected to the State's use of a peremptory challenge to exclude Franco, because she "appeared" to defense counsel to be the only Hispanic member of the venire.  The State disputed whether she was Hispanic.  Defense counsel requested that the juror information cards be preserved in the record and the trial court agreed to do so.  The juror information was not preserved in the trial court.  Nevertheless, we hold that there is sufficient information in the record to support that defendant demonstrated that Franco was Hispanic.

First, we note that "Franco" is an Hispanic surname, a fact conceded by the State. While this is not conclusive, it raises an inference.  Second, defense counsel, for whatever

reason, stated his belief that Franco appeared to him to be of Mexican descent. This fact also supports that Franco is Hispanic. Third, defendant requested that the juror information cards be preserved and the trial court agreed. In our opinion, it would be improper to hold the destruction or loss of the juror information cards against defendant where he had taken appropriate steps to preserve the record, and the record, through no fault or action of defendant, was not actually preserved. (Ordinarily, the failure to provide a complete record on appeal is construed against the appellant (People v. Pertz, 242 Ill. App. 3d 864, 905 (1993)), but where the incomplete record occurs through no fault of the appellant and fundamentally prejudices his ability to make his argument on appeal, it will not be held against him (People v. Ramos, 295 Ill. App. 3d 522, 526 (1998)).) We note that the State does not deny that the juror information cards would have had information regarding each juror's race and that they would have resolved the issue one way or the other. Defendant impliedly made that argument at trial by seeking the preservation of the juror information cards. Based on this reasoning, we conclude that defendant made a sufficient showing that Franco is Hispanic, for purposes of his argument as to establishing a prima facie case of racial discrimination.

This, however, is merely the first step in defendant's case. He has demonstrated that Franco is Hispanic. We now consider the seven factors regarding the prima facie showing identified above. The first factor weighs in defendant's favor: he and Franco are both Hispanic. This factor, while relevant to the prima facie inquiry, is not dispositive. Williams, 173 Ill. 2d at 72.

The next factor is whether the State's use of peremptories established a pattern of strikes against Hispanics. We conclude that it does not. Franco was apparently the only

Hispanic in the venire; one strike does not establish a pattern. Thus, this factor affords little weight in the determination of the prima facie inquiry. See Davis, 345 Ill. App. 3d at 909-10. However, the fact that the State struck the only Hispanic in the venire is nevertheless a relevant factor supporting a prima facie case. See People v. Jones, 177 Ill. App. 3d 663, 669 (1988).

Likewise, the next two factors, whether the State disproportionately struck Hispanics and the level of Hispanic representation in the venire compared to the jury, afford little weight to the inquiry. It is not particularly meaningful to attempt to discern disproportionality on the basis of a single peremptory challenge. Further, because Franco was the sole Hispanic in the venire, the levels of representation in the venire and the jury are unenlightening.

The next factor concerns the prosecutor's questions and statements during voir dire. The attorneys were allowed to do much of the questioning in voir dire. The prosecutor verbalized nothing on the record to indicate racial animus. This factor weighs against a finding of purposeful racial discrimination.

The next factor is whether the excluded jurors shared only race in common. As Franco constitutes a group of one, this factor is of little weight. Relatedly, however, an important factor often considered at this point in the context of establishing a prima facie case of discrimination is whether the excluded juror shared common characteristics with other, nonminority jurors who were not challenged. See Davis, 345 Ill. App. 3d at 908 (exclusion of juror of same race as defendant and who shared common characteristics with accepted nonminority jurors raises an inference that the exclusion was due to race). During voir dire, the State emphasized that Franco's sister had a drug problem and offered this as

a distinguishing factor from other jurors it had accepted. However, six other venirepersons also had relatives or friends who were involved with drugs in their pasts, yet they were not challenged. Juror Gordon had a brother involved with drugs who underwent rehabilitation. Like Franco, Gordon was not close with his brother and stated he was able to put aside his brother's situation. Juror Malenke had a friend who sold drugs and who was sentenced to prison as a result. Malenke admitted that he had known his friend was selling drugs. The State did not challenge Malenke. Juror Quinn had a niece and a cousin, both of whom she was very close to, who were involved with drugs beginning 10 to 15 years before the trial. Quinn revealed that one was still struggling through rehabilitation at the time of trial, yet the State accepted Quinn without challenge. Juror Moser had a son who was arrested for possession of cannabis. Juror Condon had been convicted of drunk driving and had been through mandatory evaluation and counseling as a result. Juror DeTolve participated in a 12-step program and knew a number of people who had serious drug problems. Further, DeTolve admitted that he had purchased illegal drugs. All three venirepersons were accepted by the State. Thus, Franco shared important characteristics with other venirepersons who were deemed acceptable. This factor weighs strongly in favor of establishing a prima facie case. See Davis, 345 Ill. App. 3d at 908.

The final factor, the racial identity of the defendant, victim, and witnesses, is of little weight here. There was no victim as such, and defendant and most of the witnesses were Hispanic, but no inference toward or against racial discrimination arises from these facts.

In sum, therefore, we hold that the trial court erred in determining that defendant did not establish a prima facie case of racial discrimination in Franco's exclusion. Our examination of the record and the relevant circumstances demonstrates that defendant was

ˇ12ˇ

Hispanic and yet the State excluded the only Hispanic in the venire, and that this juror shared characteristics with other, accepted venire members. Based on this review, we hold that the trial court's determination that defendant failed to make a prima facie showing of racial discrimination under Batson was against the manifest weight of the evidence.

The State, for its part, argues that there is no evidence in the record to establish Franco's race. We have already determined above that there is sufficient evidence to demonstrate, for the purposes of the prima facie showing, that Franco is Hispanic. First, her name is, as the State conceded, a common Hispanic surname. Second, defendant properly and timely attempted to preserve the record via the juror information cards. The exclusion of the juror information cards from the record was not defendant's fault and cannot be held against defendant. Ramos, 295 Ill. App. 3d at 526. Moreover, the State does not dispute that the juror information cards would resolve the issue. Based on this and contrary to the State's position, we conclude that there is a sufficient record to establish that Franco is Hispanic.

The State also argues that, considering the seven factors, defendant failed to make out a prima facie case of discrimination in the State's utilization of its peremptory challenges. The State, however, fails to provide any meaningful argument on that point. Instead, it correctly notes that the factors we identified as having little weight indeed have little weight in the analysis. The State argues that the racial identity factor cuts against defendant because the record does not disclose the race of Franco. We need not address that point further, other than to note that the State's analysis proceeds from an erroneous starting point. The State wholly ignores whether Franco shared common characteristics with other, nonminority venirepersons whom the State did not peremptorily challenge.

Instead, the State asserts that defense counsel did not raise the seven factors in making his argument. We disagree. Defense counsel argued that Franco shared a racial identity with defendant, and noted that other, nonminority jurors had the same characteristics as Franco, but were not challenged. Thus, to the extent that the State is suggesting that defendant has waived this argument, we find that the record flatly contradicts the State's argument.

Based on this, we reject the State's arguments. Defendant sufficiently demonstrated that Franco is Hispanic and further sufficiently demonstrated a prima facie case that the State used its peremptory challenges to exclude Franco on the basis of race. Accordingly, we must remand the case to allow the State to proceed to step two of the Batson analysis-- to advance a race-neutral explanation as to why it exercised the challenge. Following this, the trial court will proceed to step three, determining whether the reason is pretextual. See Davis, 345 Ill. App. 3d at 911 (remedy for erroneous prima facie determination is remand to allow remainder of Batson hearing to be held). Based on our resolution of this issue, we need not consider defendant's alternative argument that the trial court erroneously determined that the State's reasons for striking Franco were not pretextual.

## III. CONCLUSION

Accordingly, we remand this cause to the circuit court of Kane County and direct it to hold the remaining stages of the Batson hearing. If the circuit court determines that the peremptory challenge against Franco is not a Batson violation, then defendant's conviction and sentence shall stand. If, however, the circuit court determines that the peremptory

challenge against Franco constitutes a <u>Batson</u> violation, then defendant's conviction shall be vacated and the circuit court shall order a new trial.

Remanded with directions.

BOWMAN and GILLERAN JOHNSON, JJ., concur.