# Illinois Official Reports

# Appellate Court

---

### *People v. Little*, 2021 IL App (1st) 191108

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. VALEN LITTLE, Defendant-Appellant. |
| District & No. | First District, Second Division<br>No. 1-19-1108 |
| Filed | June 8, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CR-3260; the Hon. Domenica A. Stephenson, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | James E. Chadd, Douglas R. Hoff, and Deepa Punjabi, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Janet C. Mahoney, and David H. Iskowich, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.<br>Justices Lavin and Cobbs concurred in the judgment and opinion. |

**OPINION**

¶ 1    The petitioner, Valen Little, appeals from the summary dismissal of his *pro se* postconviction petition filed pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)). On appeal, the petitioner contends that the circuit court erred in summarily dismissing his petition, where he made an arguable claim of ineffective assistance of trial counsel. Specifically, the petitioner argues that counsel was ineffective when he failed to challenge the State's exclusion of an African American venireperson from the petitioner's jury pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986). For the following reasons, we reverse and remand.

¶ 2                                    I. BACKGROUND

¶ 3    The record before us reveals the following relevant facts and procedural history. In 2014, the petitioner was arrested and charged with aggravated criminal sexual assault after his DNA was matched with the male DNA profile obtained from a rape kit performed on the victim, V.T., immediately after her April 25, 2006, attack. The petitioner's first jury trial resulted in a mistrial due to juror misconduct. The petitioner proceeded with his second jury trial on June 22, 2015.

¶ 4    During the jury selection process of that second trial, the trial court questioned 35 venirepersons. Of those 35, 6 were African American (Erma Barnes, Kenneth Addo, Demetrice Isby, Dianna Mogobo, Lynn Ann Walter, and Anthony Collins). Only one of these six, Addo, was selected and seated as a juror at the petitioner's trial. Three (Barnes, Walter, and Collins) were excluded by agreement for cause (two at the State's request, and one on the court's own initiative). Specifically, the court excluded Barnes because her niece worked at the courthouse and the trial court found her answers regarding her impartiality to be "disingenuous." Walter and Collins were excluded at the State's request because Walter had a prior commitment (*i.e.*, she had to pick up her sister from the University of Missouri) and Collins had failed to disclose a prior arrest. The petitioner unsuccessfully attempted to remove Mogobo for cause after she expressed equivocation as to whether she could be impartial since one of her family members had been sexually molested. After the court denied the petitioner's request, defense counsel used a peremptory challenge to remove Mogobo from the jury. The sixth African American venireperson, Isby, was peremptorily removed by the State. The State exercised four more peremptory challenges, one against an Asian venireperson, and three more against Caucasian venirepersons.

¶ 5    Relevant to this appeal, the following information was elicited by the trial court from venireperson Isby. Isby was single, worked as a security guard, rented her home in the west side of Chicago, and had three teenage children and a five-year-old. She enjoyed traveling and watching television in her free time. Isby did not list any prior jury service, any arrests, or any experience with the judicial system. Neither she nor anyone she knew had ever been the victim of a crime, had been charged with an offense similar to the one at issue in this trial, or had any involvement in the legal or law enforcement professions. The State never asked Isby any questions and did not indicate why it removed her from the jury pool.

¶ 6    The record further reveals that two similar, but non-African American venirepersons, Olya Koteva Ivanova and Vilma Quezada, were accepted and seated as jurors. During her *voir dire*,

Ivanova stated that she owned a home in a northern suburb, worked as a janitor, was married, had three grown children, and enjoyed reading, bike riding, yoga, and walking in her free time. Ivanova did not list any prior jury service, arrets, or experience with the judicial system. She had also never been the victim of a crime and did not know anyone who had been or who had been charged with an offense like the one at issue in this trial or had any involvement in the legal or law enforcement professions. Similarly, Quezada stated that she lived in the north side of Chicago, worked in retail, owned her home, was married, had grown children, and enjoyed watching movies, gardening, and traveling in her free time. Quezada did not list any prior jury service, arrests, any experience with the judicial system, or that she or anyone she knew had ever been the victim of a crime, charged with an offense like the one at issue at this trial, or had any involvement in the legal or law enforcement professions.

¶ 7       The 12-member jury that was ultimately selected and presided over the petitioner's second trial was comprised of 10 women and 2 men, only 1 of whom was African American. Because the facts of the second trial are set forth in this court's decision on direct appeal (*People v. Little*, 2018 IL App (1st) 152711-U) and have no bearing on the resolution of the issues currently before us, we need not repeat them in detail here. Briefly stated, at trial the victim testified about the night of her sexual assault. The petitioner, on the other hand, admitted to having sexual relations with the victim but maintained that the encounter was consensual and that the victim had reported him because he had not paid her enough for the encounter. The jury found the petitioner guilty of two counts of aggravated criminal sexual assault (720 ILCS 5/12-14(a)(3) (West 2006)). The trial court subsequently sentenced him to two consecutive 10-year terms.

¶ 8       After the petitioner's conviction was affirmed on appeal (*Little*, 2018 IL App (1st) 152711-U), on January 4, 2019, the petitioner filed the instant *pro se* postconviction petition. Therein, he alleged, *inter alia*, that he was denied his constitutional right to effective representation when his trial counsel failed to challenge the jury's composition pursuant to *Batson*, 476 U.S. 79. Specifically, the petitioner asserted that (1) the State excluded "all" the African American venirepersons from the jury based on their race; (2) "put[ ] all white females on an aggravated criminal sexual assault charge"; and (3) permitted two venirepersons, Ninfa Maruffo and Mogobo, to be selected as jurors even though they both stated that they had family members who had been sexually molested in the past. In support of his claims, the petitioner only attached portions of his trial transcript containing the *voir dire* of venireperson Maruffo and the trial court's subsequent denial of defense counsel's request to exclude venirepersons Maruffo and Mogobo for cause.

¶ 9       On April 3, 2019, the circuit court summarily dismissed the *pro se* postconviction petition, finding it to be frivolous and patently without merit. Specifically, with respect to the *Batson* challenge, the trial court held that the petitioner's allegations were both factually and legally groundless. As the court stated:

> "Here, [the petitioner's] claim that the prosecution excluded every Black juror is rebutted by the record. The record of *voir dire* for [the petitioner's] second trial indicates that 6 of the 35 venirepersons questioned were Black. Of those 6: 1 was selected as a juror, 3 were excluded for cause (2 challenged by the defense, 1 by the

prosecution),[1] 1 was excluded by the defense, and only 1 was excluded by the prosecution. Therefore, the prosecution did not exhibit a pattern of strikes or a disproportionate use of strikes against Black venirepersons. [The petitioner] has not alleged, and the record does not reflect, that the prosecutor's questions or statements during *voir dire* evinced a discriminatory purpose behind its single use of a peremptory challenge against a Black venireperson. [The petitioner] has not even arguably made a *prima facie* showing of discrimination. Therefore, [the petitioner] *** cannot establish that his counsel was even arguably deficient for failing to raise a *Batson* challenge, and this claim is patently without merit."

The petitioner now appeals.

## II. ANALYSIS

At the outset, we note that the Act (725 ILCS 5/122-1 *et seq.* (West 2018)) provides a three-step process by which a convicted defendant may assert a substantial denial of his or her constitutional rights in the proceedings that led to the conviction. *People v. Edwards*, 2012 IL 111711, ¶ 21; *People v. Tate*, 2012 IL 112214, ¶ 8; see also *People v. Walker*, 2015 IL App (1st) 130530, ¶ 11 (citing *People v. Harris*, 224 Ill. 2d 115, 124 (2007)). A proceeding under the Act is a collateral attack on a prior conviction and sentence and is therefore "not a substitute for, or an addendum to, direct appeal." *People v. Kokoraleis*, 159 Ill. 2d 325, 328 (1994); see *Edwards*, 2012 IL 111711, ¶ 21; *People v. Barrow*, 195 Ill. 2d 506, 519 (2001). Accordingly, any issues that were decided on direct appeal are *res judicata*, and any issues that could have been presented on direct appeal, but were not, are waived. *Edwards*, 2012 IL 111711, ¶ 21; see also *People v. Ligon*, 239 Ill. 2d 94, 103 (2010); *People v. Reyes*, 369 Ill. App. 3d 1, 12 (2006).

At the first stage of postconviction proceedings, such as here, the circuit court must independently review the petition, taking the allegations as true and determine whether " 'the petition is frivolous or is patently without merit.' " *People v. Hodges*, 234 Ill. 2d 1, 10 (2009) (quoting 725 ILCS 5/122-2.1(a)(2) (West 2006)); see also *Tate*, 2012 IL 112214, ¶ 9. At this stage, the court may not engage in any factual determinations or credibility findings. See *People v. Plummer*, 344 Ill. App. 3d 1016, 1020 (2003) ("[t]he Illinois Supreme Court *** [has] recognized that factual disputes raised by the pleadings cannot be resolved by a motion to dismiss at either the first stage *** or at the second stage [of postconviction proceedings] but, rather, [they] can only be resolved by an evidentiary hearing"); see also *People v. Coleman*, 183 Ill. 2d 366, 380-81 (1998) (noting that the supreme court has "foreclosed the circuit court from engaging in any fact-finding at a dismissal hearing because all well-pleaded facts are to be taken as true at this point in the proceeding"). Instead, the court may summarily dismiss the petition only if it finds the petition to be frivolous or patently without merit. See *People v. Ross*, 2015 IL App (1st) 120089, ¶ 30; see also *Hodges*, 234 Ill. 2d at 10. A petition is frivolous or patently without merit if it has no arguable basis either in law or in fact. *Tate*, 2012 IL 112214, ¶ 9. Our supreme court has explained that a petition lacks an arguable basis where it "is based on an indisputably meritless legal theory or a fanciful factual allegation"—

---

[1]The record affirmatively rebuts this conclusion made by the circuit court. As noted above, of the three African American venirepersons that were removed for cause, two were challenged by the prosecution and one by the trial judge.

in other words, an allegation that is "fantastic or delusional" or is "completely contradicted by the record." *Hodges*, 234 Ill. 2d at 16-17; *People v. Brown*, 236 Ill. 2d 175, 185 (2010); see also *Ross*, 2015 IL App (1st) 120089, ¶ 31. Our review of summary dismissal is *de novo*. *Tate*, 2012 IL 112214, ¶ 10.

¶ 13    On appeal, the petitioner contends that the circuit court erred in summarily dismissing his petition because he made an arguable claim that his trial counsel was ineffective when he failed to object to the State's peremptory challenge of African American venireperson Isby, pursuant to *Batson*.

¶ 14    The State first responds that the petitioner's claim is forfeited because he did not raise it in his *pro se* postconviction petition. See 725 ILCS 5/122-3 (West 2018) ("[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived"); *People v. Johnson*, 352 Ill. App. 3d 442, 449 (2004) ("any issue to be reviewed on appeal must be presented in the petition filed in the trial court"). Specifically, the State argues that the petitioner "cabined his challenge to [his] counsel's performance *vis-à-vis*" only two venirepersons, Maruffo and Mogobo, whom he explicitly named in his *pro se* petition. The State points out that Isby, whose peremptory challenge the petitioner now claims was discriminatory and should have been objected to by his trial counsel, was never mentioned in either his *pro se* petition or the portions of the trial transcript he attached in support thereof. Accordingly, the State contends that the petitioner should be barred from challenging Isby's exclusion from the jury for the first time on appeal.

¶ 15    The State's strict construction of the petitioner's pleading, however, is inconsistent with the requirement that *pro se* petitions be given liberal construction. See *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). It is axiomatic that in reviewing the dismissal of a *pro se* petition we are tasked with determining "whether the allegations in the petition, *liberally construed* and taken as true, are sufficient to invoke relief under the Act." (Emphases added and omitted and internal quotation marks omitted.) *People v. Cathey*, 2012 IL 111746, ¶ 21; see also *Edwards*, 197 Ill. 2d at 244 (a *pro se* petition "need only present a limited amount of detail" and "hence need not set forth the claim in its entirety" (internal quotation marks omitted)). In the present case, there can be no doubt that liberally construed, the petitioner's *pro se* petition can be read as presenting a challenge to counsel's effectiveness based upon counsel's failure to object to Isby's removal from the jury based on Isby's race. The *pro se* petition undisputedly argued that counsel should have raised a *Batson* challenge to the striking of "all" African American venirepersons from the petitioner's jury. Such an argument, liberally construed, was sufficiently specific to raise a challenge to all or any one of the African American venirepersons stricken from the jury. Moreover, the State's complaint that the petition did not attach portions of the trial transcript related to Isby's removal from the jury is immaterial. The Act clearly states that in considering a petition at this stage of postconviction proceedings, both the circuit and appellate courts may examine "the court file of the proceeding in which the petitioner was convicted, *** and any transcripts of such proceeding" (725 ILCS 5/122-2.1(c) (West 2018)) and then take "[a]ll well-pleaded factual allegations not positively rebutted by th[at] trial record *** as true" (*People v. Sanders*, 2016 IL 118123, ¶ 42). In the present case, the transcript of the proceedings provided to us on appeal encompasses the entire jury selection process, including Isby's *voir dire* and her removal from the jury pool. Moreover, it is apparent from the circuit court's comments that in dismissing the *pro se* petition, the court reviewed the entire transcript of the jury selection process and took into account all of the African American

jurors that were on the venire. As such, we fail to see how the petitioner's failure to attach certain pages of that transcript to his petition should prevent us from reviewing the merits of his claim regarding Isby. We therefore conclude that the petitioner has not forfeited this claim for purposes of appeal. See *People v. Thomas*, 2014 IL App (2d) 121001, ¶ 48 ("[T]he pleading must bear some relationship to the issue raised on appeal.").

¶ 16    Having found no impediment to our review, we turn to the merits of the petitioner's claim. Every criminal defendant has a constitutional right to the effective assistance of counsel under the sixth amendment of the United States Constitution and the Illinois Constitution. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. For a claim of ineffective assistance of counsel, we follow the well-known standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted by our supreme court in *People v. Albanese*, 104 Ill. 2d 504 (1984). To establish ineffective assistance, the defendant must show both that (1) his counsel's conduct fell below an objective standard of reasonableness and (2) he was prejudiced as a result of that conduct. See *People v. Lacy*, 407 Ill. App. 3d 442, 456 (2011); see also *People v. Ward*, 371 Ill. App. 3d 382, 434 (2007) (citing *Strickland*, 466 U.S. at 687-94)).

¶ 17    Under the first prong of *Strickland*, the petitioner must overcome the strong presumption that the challenged action or inaction might have been the product of sound trial strategy. *Lacy*, 407 Ill. App. 3d at 456-57. Under the second prong of *Strickland*, the petitioner must show that "but for" counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. *Id.* at 457; see also *People v. Colon*, 225 Ill. 2d 125, 135 (2007). "[A] reasonable probability that the result would have been different is a probability sufficient to undermine confidence in the outcome—or put another way, that counsel's deficient performance rendered the result of [the proceedings] unreliable or fundamentally unfair." *People v. Evans*, 209 Ill. 2d 194, 220 (2004); see also *Plummer*, 344 Ill. App. 3d at 1019 (citing *Strickland*, 466 U.S. at 694).

¶ 18    In the context of a first stage postconviction proceeding, such as the one here, a petitioner need only show that he can arguably meet these two standards, *i.e.*, (1) it is *arguable* that counsel's performance was deficient and (2) it is *arguable* that the outcome of his case would have been different absent the deficient representation. See *People v. Wilson*, 2013 IL App (1st) 112303, ¶ 20; see also *Hodges*, 234 Ill. 2d at 17.

¶ 19    For the following reasons, in the present case, we find that the *pro se* petition sufficiently alleged that counsel was arguably deficient for failing to object to the State's peremptory challenge of venireperson Isby and that this deficient performance prejudiced the petitioner.

¶ 20    It is axiomatic that the right to effective representation includes the right to effective assistance in preserving and establishing a claim of racial discrimination in the selection of one's jury pursuant to *Batson*. See *People v. Coulter*, 352 Ill. App. 3d 151, 157 (2004); see also *Sullivan v. United States*, 877 F.3d 337, 340 (7th Cir. 2017). To show that counsel was ineffective for failing to raise a challenge under *Batson*, at the first stage of postconviction proceedings a defendant must make an "arguable showing" of a meritorious *Batson* claim.

¶ 21    In *Batson*, the United States Supreme Court held that, in a criminal case, the fourteenth amendment's equal protection clause prohibits a prosecutor from using a peremptory challenge to exclude a prospective juror solely on the basis of his or her race. *Batson* 476 U.S. at 89. Under *Batson*, the equal protection clause is violated when the facts show that the State excluded an African American venireperson on the assumption that he or she will be biased in favor of the defendant simply because of their shared race. *Id.* at 97.

¶ 22        The *Batson* Court established a three-step process for evaluating claims of discrimination in jury selection. First, "the defendant must make a *prima facie* showing that the prosecutor has exercised peremptory challenges on the basis of race." *People v. Williams*, 209 Ill. 2d 227, 244 (2004). During the second step, once the trial court determines defendant has established a *prima facie* case, the burden shifts to the State to provide a race-neutral explanation for excluding the potential jury members. *Id.* The defendant may then rebut the proffered reason as pretextual. *Id.* Finally, during the third step of the *Batson* hearing, the trial court must determine whether the defendant has met his burden of showing purposeful discrimination in light of the parties' submissions. *Id.*

¶ 23        Although the trial judge who presided over the jury selection process in this case did not address *Batson* given that trial counsel chose not to raise the issue, we may nevertheless undertake an "objective review of the record" in determining whether a *Batson* error arguably occurred. See *People v. Pasch*, 152 Ill. 2d 133, 163 (1992) ("Since there appears to have been no affirmative ruling one way or the other by the judge on this [*Batson*] issue, we must determine whether the trial judge's action, or inaction, which presumes the lack of a *prima facie* showing, was against the manifest weight of the evidence."); see also *Coulter*, 352 Ill. App. 3d at 157 (noting "the difficulty of considering *Batson* arguments on appeal" when the reviewing court is "required to study a cold record," but noting that "a substantive analysis of defendant's *Batson* claim[ ] is central to a consideration of the effectiveness of defendant's *** counsel"). Specifically, we may examine the record to determine whether the petitioner can arguably make a *prima facie* showing of discriminatory purpose in the State's preemptory challenge of Isby, which would have arguably triggered counsel's duty to object to her exclusion from the jury. In doing so, however, we are mindful that at this stage of postconviction proceedings, we may not engage in any credibility findings or factual determinations that are not apparent from the record. See *Plummer*, 344 Ill. App. 3d at 1020.

¶ 24        Under *Batson*, in order to establish a *prima facie* showing of discrimination, a defendant must present relevant factors or circumstances, which raise an inference that the prosecutor challenged the venirepersons on account of their race. See *People v. Williams*, 173 Ill. 2d 48, 71 (1996); *People v. Davis*, 231 Ill. 2d 349, 360 (2008). Some of the factors generally deemed relevant in establishing a *prima facie* case of discrimination include (1) the racial identity between the petitioner and the excluded venirepersons; (2) a pattern of strikes against African American venirepersons; (3) a disproportionate use of peremptory challenges against African American venirepersons; (4) the level of African American representation in the venire as compared to the jury; (5) the State's questions and statements during *voir dire* and while exercising peremptory challenges; (6) whether the excluded African American venirepersons were a heterogenous group sharing race as their only common characteristic; and (7) the race of the defendant, victim, and witnesses. *Williams*, 173 Ill. 2d at 71. These examples, however, are " 'merely illustrative' " and are not all inclusive. *People v. Davis*, 345 Ill. App. 3d 901, 907 (2004) (quoting *Batson*, 476 U.S. at 97); see also *People v. Holman*, 132 Ill. 2d 128, 173 (1989). Instead, in determining whether a defendant has met his burden of establishing a *prima facie* showing of discrimination, the trial court "must consider 'the totality of the relevant facts' and 'all relevant circumstances' surrounding the peremptory strike." *Davis*, 231 Ill. 2d at 360 (quoting *Batson*, 476 U.S. at 94, 96-97).

¶ 25        In the present case, the petitioner acknowledges that factors three and seven are not favorable to him. He nonetheless asserts that the totality of the relevant factors and

circumstances are in the very least arguably sufficient to raise an inference that the prosecutor peremptorily challenged Isby on account of her race. In particular, the petitioner points out (1) the shared racial identity between himself and Isby, (2) the similarity between Isby and two other seated jury members (Ivanova and Quezada) who were of a different race, (3) the pattern of the State's removal of other African American venirepersons (albeit for cause), and (4) the overall composition of the venire versus the seated jury. For the following reasons, we agree with the petitioner.

¶ 26 The record below reveals that the State used a peremptory challenge to remove Isby, who was the only remaining African American on the venire after the for-cause challenges were exhausted (two by the State and one by the trial court) and after the petitioner excluded Mogobo because of her prior relationship to someone who had been sexually molested.

¶ 27 Nothing in the *voir dire* examination of Isby reveals any basis for excluding her from the jury panel. Nor did the State give any explanation as to why it chose to remove her from the venire. During her *voir dire*, Isby stated that she was single, lived on the west side of Chicago, rented her home, worked as a security guard, had three teenage children and a five-year-old, and enjoyed traveling and watching television in her free time. Isby did not list any prior jury service, any arrests, or any experience with the judicial system. She further stated that neither she nor anyone she knew had ever been the victim of a crime, charged with an offense similar to the one at issue in the petitioner's trial, or involved in the legal or law enforcement professions. Isby also acknowledged that she would follow the law, base her verdict on the evidence, and have no problem rendering either a guilty or not guilty verdict.

¶ 28 Moreover, the record reveals that aside from her race, Isby had substantially the same characteristics as two other accepted members of the venire (Ivanova and Quezada). Like Isby, both Ivanova and Quezada worked in nonprofessional jobs, had older children, and had hobbies such as watching television and movies or traveling. Both women also listed no prior jury service, arrets, or experience with the judicial system and denied that they or anyone they knew had ever been the victim of a crime, charged with an offense similar to the one at issue in the petitioner's trial, or had any involvement in the legal or law professions.

¶ 29 This court has previously held that the exclusion of even a single African American juror who shares common characteristics with the selected jurors, except for race, raises an inference that the African American juror was excluded solely on the basis of his or her race. See *Davis*, 345 Ill. App. 3d at 908; see also *People v. Holmes*, 272 Ill. App. 3d 1047, 1057 (1995). As we have explained, in such circumstances "[a]bsent some reasonable ground, apparent on the record, for exercising a peremptory challenge, the record raises an inference that the challenge was exercised for a racially discriminatory purpose." *Davis*, 345 Ill. App. 3d at 908. Because the record here is devoid of any such reasonable ground, we find that the petitioner has arguably established that the prosecutor used his peremptory challenge to exclude Isby from the jury on account of her race. See, *e.g.*, *People v. Alvarado*, 365 Ill. App. 3d 216, 220-25 (2006) (holding that the defendant made a *prima facie* showing of discriminatory purpose where he and the stricken juror were both Hispanic and the stricken juror shared traits with several accepted jurors, even though the prosecutor's questions suggested no racial animus); *Davis*, 345 Ill. App. 3d at 907-08 (finding that the African American defendant made a *prima facie* showing of discriminatory purpose where the State peremptorily removed the sole African American venire member but accepted Caucasian jurors who, apart from race, shared similar traits); *Holmes*, 272 Ill. App. 3d at 1054-58 (holding that the defendant made a

*prima facie* showing of discriminatory intent where the State struck two African American venire members and the stricken jurors shared traits with the jurors that were selected, even though at least three members of those seated were African Americans).

¶ 30    The State nonetheless maintains that the mere coincidence that Isby and the unchallenged non-African American jurors (Ivanova and Quezada) shared certain characteristics does not establish purposeful discrimination because Isby may have possessed an additional trait that caused the prosecutor to excuse her. In other words, the State essentially argues that there could have been race-neutral reasons that accounted for her exclusion, such as that Isby rented instead of owned her home and was single rather than married, unliked Quezada and Ivanova. We disagree.

¶ 31    At the outset, we note that, contrary to the State's assertion, the prosecutor accepted no less than seven other non-African American, single non-homeowners onto the jury: Laura Fain, Sarai Saravia Roca, Megan Aguilar, Lynda Lanford, Janet Kaberna, Katie Moran, and Carolyn Sever (as an alternate). More importantly, "[a]ny such proffered reasons *** are irrelevant at this first stage of the *Batson* analysis, because at this stage, the issue is not whether there were any legitimate race-neutral reasons for the exclusion but, rather, whether defendant established a *prima facie* case of purposeful discrimination under *Batson*." *Davis*, 345 Ill. App. 3d at 909; see also *Holmes*, 272 Ill. App. 3d at 1058. In addition, at this stage of postconviction proceedings we are not allowed to speculate as to the State's reasons but rather must take all the petitioner's allegations that are not positively rebutted by the record as true. *Sanders*, 2016 IL 118123, ¶ 42. The record here by no means positively rebuts the inference that the State excluded Isby from the jury on account of her race.

¶ 32    The State nonetheless asserts that the petitioner has failed to establish a *prima facie* case of discrimination because the preemptory removal of one African American venireperson does not constitute a pattern of strikes. We disagree.

¶ 33    The record reveals that of the six African American members of the venire, only one (Addo) was selected to remain on the jury. Of the five that were stricken (namely Walter, Collins, Barnes, Mogobo, and Isby), three were removed upon the State's (peremptory or for-cause) request (Walter, Collins, and Isby). As such, the State was responsible for removing 50% of African American prospective jurors from the venire. In and of itself this statistic, which is not positively rebutted by the record, and therefore must be taken as true, arguably permits an inference that the State had a discriminatory purpose.

¶ 34    The State further assert that the ratio of African Americans on the venire as compared to the jury does not permit an inference of discriminatory intent. Specifically, the State argues that in calculating the ratio of African Americans in the venire as compared to the jury, we may not take into account the three venirepersons that were removed for cause. See *People v. Evans*, 125 Ill. 2d 50, 65 (1988); *People v. Gutierrez*, 402 Ill. App. 3d 866, 893 (2010). The State then contends that because 11 of the 35 venirepersons (Barnes, Walter, Collins, Brian Bain, Susan Cowen, Mohammed Hussein, Lydia Diacona, Jill Koski, Maria Gonzalez, Adrienna Carbollo Calderon, and Mary Weiss) were excluded for cause, 12.5% of the venire (*i.e.*, 3 out of 24) and 7% of the sworn jury members were African American (*i.e.*, 1 out of 14 jurors—12 jurors and 2 alternates). According to the State, this 2.5% difference between the African Americans on the jury and those on the venire "is not significant enough to weigh in [the] petitioner's favor." In support, the State cites *People v. Lann*, 261 Ill. App. 3d 456, 464 (1994), where the court found that a nine-point difference between the number of African

Americans on the venire (32%) and on the jury (23%) was only "slight evidence of discriminat[ion]," and *People v. Mayes*, 257 Ill. App. 3d 137, 148 (1993), where the court found that a one-point difference was "too slight to raise an inference of discriminatory intent."

¶ 35 Contrary to the State's position, however, under its own cited authority, we are compelled to conclude that the 2.5% difference in the African American composition of the venire versus the jury in the very least "arguably" permits an inference, albeit "slight," of discriminatory intent by the State.

¶ 36 Accordingly, under the totality of relevant factors and circumstances presented by the record, we conclude that the petitioner has arguably made a *prima facie* showing that the State's preemptory exclusion of Isby from the venire was made on the basis of her race. As such, the petitioner's allegation that counsel was ineffective for failing to make a *Batson* objection to Isby's removal is neither fanciful and delusional nor based upon an indisputably meritless legal theory so as to have warranted dismissal of his petition.

¶ 37 The State nonetheless asserts that even if the petitioner has made an arguable claim of counsel's ineffectiveness for failure to make a *Batson* objection to the removal of Isby, he has failed to establish any prejudice resulting from this failure as required under the second prong of *Strickland*. Specifically, the State contends that the petitioner has failed to establish that there is a reasonable probability that absent counsel's objection, the outcome of the petitioner's proceedings would have been different, *i.e.*, counsel's objection would have survived the entire *Batson* analysis and the court would have found the State's submitted reasons for Isby's exclusion pretextual. We disagree.

¶ 38 At the outset we note that the State's proffered analysis would have us engage in speculation as to the potential nonpretextual reasons for Isby's removal from the jury and the trial court's acceptance or rejection of those potential reasons. Such speculation, however, is inappropriate for first stage postconviction review.

¶ 39 Moreover, contrary to the State's position, the Seventh Circuit has held that, in the context of counsel's failure to raise a *Batson* objection, prejudice under the second prong of *Strickland* must be presumed. See *Winston v. Boatright*, 649 F.3d 618, 633 (7th Cir. 2011). In *Winston*, the Seventh Circuit specifically considered what constitutes an adequate showing of *Strickland* prejudice in the context of counsel's failure to raise a *Batson* objection during jury selection. See *id.* at 632. Noting that "a direct *Batson* claim would be viewed as a structural error and thus not subject to a harmless-error rule," the court explained how prejudice should be analyzed when the *Batson* error is raised under *Strickland* as counsel's failure to object. *Id.* As the court elaborated:

> "[T]he [United States] Supreme Court has said that structural errors fall within 'a limited class of fundamental constitutional errors that defy analysis by harmless error standards.' [*Neder v. United States*, 527 U.S. 1, 7 (1999).] If, therefore, analysis is impossible for harmless-error purposes, then it is hard to see how it would be possible for purposes of *Strickland* prejudice—after all, prejudice is the central inquiry in a harmless error inquiry. But a closer look at *Neder* reveals that the Court was not so much dispensing with harmless error as it was finding that structural errors 'are so intrinsically harmful as to require automatic reversal.' *Id.* Translated into *Strickland*'s terms, it was saying that such errors inevitably 'undermine[ ] confidence in the outcome' of a proceeding. [*Strickland*, 466 U.S. at 694.]" *Id.*

Accordingly, the Seventh Circuit concluded that *Strickland* prejudice must be presumed when counsel fails to assert a *Batson* error. *Id.*

¶ 40 We agree with the rationale of *Winston* and, applying it here, find that in the context of counsel's failure to object to Isby's exclusion from the jury, prejudice must be presumed. In doing so, we note that in our legal system, racial discrimination in jury selection is universally recognized as a constitutional error of the highest magnitude, whose mere existence casts a pall over the entirety of the criminal proceeding so severe as to necessitate automatic reversal of a conviction without regard to the strength of the evidence in support of a finding of guilt. See *Batson*, 476 U.S. at 100 (once a *Batson* violation is established, "our precedents *require* that petitioner's conviction be reversed" (emphasis added)); *Vasquez v. Hillery*, 474 U.S. 254, 263-64 (1986) (discrimination in the jury selection "undermines the structural integrity of the criminal tribunal itself, and is not amenable to harmless-error review"); *Avery v. Georgia*, 345 U.S. 559, 561 (1953); *Rivera v. Illinois*, 556 U.S. 148, 161 (2009) (a *Batson* error requires "automatic reversal"); *United States v. Angel*, 355 F.3d 462, 471 (6th Cir. 2004) ("[A]ny racial discrimination in jury selection constitutes structural error that requires automatic reversal.").

¶ 41 Accordingly, taking, as we must, the petitioner's well-pleaded allegations as true, we conclude that the petitioner has arguably established both counsel's deficient performance and prejudice resulting from that performance. We therefore find that the petitioner should be permitted to proceed with his ineffective assistance of counsel claim.

¶ 42                                    III. CONCLUSION

¶ 43 For the aforementioned reasons, we reverse the trial court's dismissal of the petitioner's *pro se* postconviction petition and remand for further proceedings under the Act.

¶ 44 Reversed and remanded.